## Case No. 4,974.

### FOSTER v. JOICE.

[3 Wash. C. C. 498.] [1]

Circuit Court, D. New Jersey. Oct. Term, 1819.

Stockton, Griffith & Cox, for lessor of plaintiff.

Mr. Ewing and L. H. Stockton, for defendant.

Before WASHINGTON, Circuit Justice, and PENNINGTON, District Judge.

WASHINGTON, Circuit Justice. Upon what seems to me to be the reasonable construction of the act of assembly, I should have supposed, that the probate of a will, relating to land, before the orphans' court, or before the surrogate-general, would be conclusive in any other court, where the

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

validity of the will might incidentally come in question. But I understand, that a different opinion has prevailed in the courts of this state; and I submit to the authority of that opinion. But if this be the law, I am entirely at a loss to give any sensible interpretation of the 2d section of the act, if the court, in which the validity of the will is incidentally in issue, is precluded from examining the evidence taken in the orphans' court, that it may be seen whether the will was regularly proved or not. Suppose all the witnesses, whose depositions were taken, should die—how could it be decided on the trial of an ejectment, whether the will was regularly proved or not, unless the depositions are read? And if they cannot be read, then a will so proved and recorded, cannot be equivalent to a conveyance; because it never can be known, whether it was regularly proved and recorded, or not. I am therefore of opinion, that the evidence ought to be allowed.

PENNINGTON, District Judge, was against admitting the evidence.

A number of witnesses were then examined, and the depositions taken in the orphans' court were read, (the defendant's counsel having waived the objection,) which presented much contradictory testimony, as to the sanity of the testator, and the fairness of Foster's conduct in obtaining the will. The only question of law raised, was, whether the defendant could protect his possession, by the outstanding title in the heirs of John Wells; it being conceded on both sides, that the conveyance of 1740 passed only a life estate to the grantees.

The defendant's counsel relied upon the case of Roe v. Harvey, 4 Burrows, 2487, Bull. N. P., to show that the defendant may protect his possession, by a subsisting outstanding title in a third person, and that the plaintiff must recover upon the strength of his own title. 2. That the will of Jacob Mootes, passed only an estate for life to Charles Mootes; and, therefore, he had not such an estate as he could devise to the lessor of the plaintiff.

For the plaintiff, it was answered, that in no case can the defendant set up an outstanding title in a stranger, to defeat the plaintiff in ejectment, unless he shows that he himself claims under such title; and that the plaintiff may recover, even upon a prior possession, against a mere intruder or disseisor, who comes into possession without a colour of title. [Robinson v. Campbell] 3 Wheat. [16 U. S.] 224, note; 11 Johns. 509; 3 Bl. Comm. 167.

WASHINGTON, Circuit Justice. 1st. As to the outstanding title in the heirs of Wells. Without giving any opinion as to many of the cases referred to in the note to 3 Wheat., I feel no difficulty in saying, that wherever the defendant opposes to the plaintiff's title, a superior outstanding title in a third person, under whom he does not claim, it must be a subsisting and available title, on which the asserted owner of it might recover in ejectment, if he were the lessor of the plaintiff. If it be barred by the act of limitations, or by a descent cast, it would be quite absurd to contend, that the defendant, a perfect stranger to that title, can avail himself of it, to protect his mere possession.—That is precisely the present case. Upon the death of Jacob Mootes, in 1784, the right of this land reverted to John Wells, or to his heirs. The entry of Charles Mootes was that of an intruder, and adverse to the title of Wells. He continued in possession until his death in 1798, when, by force of the 6th section of the act of 1813 (Patt. Laws, 6), the possession vested in the lessor of the plaintiff, the devisee, (if the jury should establish the will,) without the necessity of an actual entry, although some evidence of such an entry has been given. This possession continued until 1806,—more than twenty years after the entry of Charles Mootes. But even if this were not the case, there has been an adverse possession to the title of the reversioner, more than twenty years,—sufficient to bar his right of entry. This outstanding title, then, cannot avail the defendant.

2d. As to this objection, there is nothing in it. It may be admitted, that the will of Jacob Mootes passed only a life estate to his son. In truth, it passed nothing, since Jacob did not hold adversely to, but under the reversioner, and had no estate in him which he could devise. Charles Mootes, on the contrary, gained, by his intrusion, a defeasible estate in fee, of which he died seised, and could dispose of by will; subject, however, to the better title of Wells.

PENNINGTON, District Judge, did not concur in the opinion on the first point.

The question, as to the validity of the will, was submitted to the jury on the evidence. Verdict for plaintiff.