MARY HOAG and others, Appellants, *v.* CYRUS HOAG and others, Respondents.

*It seems*, that, although the tenant cannot deny the title of his landlord, he may show an outstanding title in another, even though it be a trustee of the landlord.

*It seems*, the assignee in insolvency of the lessor, who accepts the trust, and enters upon the discharge of his duties as trustee, is vested with the legal title of the assignor's property.

*It seems*, such assignment may be proved by the record of the proceedings and judgment *in rem*, granting the discharge of the insolvent.

But if the trustee do not take possession of the property assigned, and the same continues in the possession of the insolvent, or his lessee, for thirty years thereafter, the presumption of law is that the purposes of the trust have been satisfied, and is against an outstanding title in the trustee.

APPEAL from an order of the Supreme Court, at General Term, denying a motion for a new trial upon exceptions taken by plaintiffs, upon the trial at the Circuit. The action was *ejectment* by the plaintiffs, as heirs-at-law of *Mark Hoag*, deceased, to recover a farm in Delhi, Delaware county, against the widow and heirs-at-law of *Amos Hoag*, deceased.

On the first trial before Justice CAMPBELL, a verdict was ordered for the plaintiffs, which was set aside on appeal to the General Term, and a new trial ordered. The second trial was before Justice BALCOM, and a jury, and a verdict was ordered for the defendants. The plaintiffs having excepted, the exceptions were ordered to be heard in the first instance at the General Term. The court, at General Term, overruled the exceptions, and, thereupon, judgment was entered upon the verdict for the defendants. The plaintiffs then appealed to this court.

On the trial, the plaintiffs showed title to the premises through a mortgage from *Asa Weed* to *Mark Hoag*, dated August 3, 1818. This mortgage was foreclosed while Amos Hoag, under whom the defendants claim, was in the actual possession of the premises; and the premises were struck off to Amos Hoag for the sum of seven hundred and ten dollars, March 13, 1823. Amos Hoag conveyed the premises to Mark Hoag by a quitclaim deed, April 10, 1823, for the consideration of $700, as expressed in the conveyance. There was

evidence given, on the trial, tending to show that Amos Hoag recognized the title of Mark Hoag for several years afterward; that, in September, 1829, Mark Hoag proposed to give Amos Hoag a lease of the premises, dating the instrument back to some former period; and for that purpose wrote to Amos to forward him the deed or the boundaries, as specified in the deed without delay.

The defendant gave evidence tending to show that, in 1841, Amos Hoag claimed the premises, and stated to one Grove Webster that he bid them off on a mortgage for his brother, Mark. *He did not state to him any other source of title.* Others testified, that he spoke of the farm as his own, and put on some improvements, and offered to sell it and give a warrantee deed, and that it was assessed to him as far back as 1827. It further appeared, that on the 10th day of September, 1822, Mark Hoag gave to his brother, Amos Hoag, *a power of attorney to sell the premises and to execute a good and sufficient conveyance to the purchaser.* This was acknowledged on the 8th day of March, 1823. The defendant also offered in evidence the record of proceedings in insolvency, with the discharge therein granted to Mark Hoag by John T. Irving, first judge of the Court of Common Pleas of the city and county of New York, dated the 15th day of July, 1830, under the provisions of the "Act to abolish imprisonment for debt in certain cases," passed April 7, 1819, *for the purpose of showing title out of the plaintiffs.* This was objected to, on the ground that the defendant had entered and taken and held possession under Mark Hoag, without attorning to, or claiming possession under, any other person. The assignment specified in the discharge, not having been produced, the plaintiffs' counsel objected, that it must either be produced or its non-production legally accounted for, and must be shown, by legal proof, to have been duly executed. Also, that *Henry White*, mentioned in the discharge *as assignee*, had affirmed and acted under it, without which proofs the debts of Mark Hoag will be presumed to have been paid and the assignment would become inoperative; that the discharge being granted in July 1830, after the

Revised Statutes took effect, was inoperative, because it conformed to the provisions of the act of 1819. All these objections were overruled by the judge, to which the plaintiff took exceptions.

The schedules annexed to the assignment contained a statement of the insolvents' *real estate* and specified the premises in question as " one hundred acres of land situate in the town of Delhi, county of Delaware, &c., *now in possession of Amos Hoag.*"

When the testimony was closed, the judge decided that *Mark Hoag parted with his title in his insolvent proceedings, and that the plaintiffs had no title;* to which decision the plaintiffs' counsel excepted. The judge, thereupon, directed a verdict for the defendants, to which direction the plaintiffs' counsel excepted.

*Amasa J. Parker*, for the appellants.

*Wm. Murray*, for the respondents.

MORGAN, J.   I. The first question raised by the plaintiffs' exceptions is, whether Amos Hoag, under whom the defendants claim, was in a position to show title out of Mark Hoag, he having originally entered into the possession of the premises as the tenant or agent of the latter. Although the tenant cannot deny the title of the landlord under which he entered, it is competent for him to show that it has terminated, either by its original limitation or by conveyance, or by the judgment and operation of law (*Jackson ex. dem. Van Schaick* v. *Davis* 5 Cow., 135, SUTHERLAND, J.), and this the defendant may show, although he does not claim under that title, and even though the title be outstanding in the trustee of the lessor. (*Loop et al.* v. *Harrington*, 9 Cow., 86.)

II. As the defendants on the trial did not produce the original assignment of Mark Hoag, it is claimed by the plaintiffs' counsel that there was no legal proof of the execution of a conveyance of the lands in question to the assignee in insolvency.

As between the parties and their privies, the record is gen-

erally conclusive, while a stranger cannot use it in his favor. Thus, in an action by the covenantee on a covenant in *seizin*, a judgment in ejectment against the covenantor by a third person is not evidence of title out of him. Had he succeeded, however, it would be evidence for him. The right to use it must be reciprocal to warrant its introduction by either (2 Ph. and Con. Notes, 976). But a judgment *in rem.* renders the thing adjudicated upon *ipso facto* such as it is declared to be and is of effect as between all parties whatever. (Broom's Legal Maxims, 859.) The discharge granted to Mark Hoag in July, 1830, was an adjudication, *that he had executed the assignment*, and furnished, in my opinion, sufficient evidence of that fact without production of the assignment. This assignment, however, was executed under chapter 101, of the Laws of 1819. By the 4th section of the act (Laws of 1819, p. 116), it is declared that the " discharge or the record thereof shall be conclusive evidence in all courts within this State of the facts therein contained." I do not see why this provision does not make the record sufficient evidence of the assignment.

III. It was also claimed by the plaintiffs' counsel, on the trial of this action, that the proceedings in insolvency, after the Revised ·Statutes took effect, should have conformed to them instead of following the provisions of the act of 1819. It is unnecessary to examine this objection at length, as it is not now urged upon our attention. As I understand the case, the objection is sufficiently answered by the defendants' counsel, who refers us to the statute repealing the act of 1819, and especially to 3 R. S. p. 155, § 5, which especially declares that such repeal shall not affect any proceedings commenced in any civil case previous to the time when such repeal shall take effect. The discharge was, therefore, properly granted under the provisions of the act of 1819.

IV. The most important question remains to be considered. It was objected on the trial that the assignee in insolvency never affirmed or acted under it, and that the presumption is that the debts were paid, and the assignment became thereupon inoperative. The judge not only overruled this

objection, but he decided that the *plaintiff's had no title to the premises in dispute*, and thereupon directed a verdict for the defendants.

This ruling of the judge, which was duly excepted to, raises the general question whether the defendant succeeded in showing title out of the plaintiffs; that is, a *subsisting and available title in a stranger* on which the asserted owner might recover in ejectment. For, I think, it is settled that a defendant cannot avail himself of an outstanding title, which is barred by the statute of limitations, or which has never been fully vested in the grantee. (*Jackson* v. *Harder*, 4 Johns., 202; *Lessee of Foster* v. *Joice*, 3 Wash. C. C., 498.)

It will, however, be convenient first to examine the question whether there is evidence to show that the title to the lands in question vested absolutely in White, the assignee in the insolvent proceedings. Whatever title he had was by force of the assignment under the statute *as trustee for the creditors of Mark Hoag*. By § 4 of the act of 1819 (p. 117) the provisions of certain sections of the act entitled, "An act for giving relief in cases of insolvency," passed April 12, 1813, were made applicable to all cases arising under the act of 1819. By § 22 of the act of 1813 (1 R. L., p. 469), it was enacted, " that the assignee or assignees *shall, before he or they enter upon the execution of the trust committed to him or them, by virtue of this act, take an oath*, to be administered by a master in chancery, a justice of the Supreme Court, or any of the judges of the Court of Common Pleas, well and faithfully to manage the insolvent's estate, and keep and render a true account of all that shall come to his or their hands of the same. By § 23, creditors who neglected to prove their debts within one year and a half after the assignment and a division of the whole estate was made, were precluded from a dividend. But in case the whole of each insolvent's estate should not be divided and settled by the time appointed by the act, that is, within one year and a half after the assignment, such creditors were allowed to prove their debts before the time appointed for a *second division*, and thereupon take their dividends. This section concludes as follows: " *But*

*no creditor shall be admitted to prove his debt after a second division, but shall, by this act, be debarred from any share thereof.*"

I shall refer to these provisions in the consideration of another branch of the case; but I desire first to call attention to the question, whether White, the assignee, named in the insolvent's discharge, become vested with the legal title, before he took the oath prescribed by section 22? Under the English statutes relating to bankruptcy, if the assignees of the bankrupt *did not accept* an estate conveyed to them by the commissioners in bankruptcy, it remained in the bankrupt. This was decided in *Copeland* v. *Stevens* (1 B. & A., 593), in which case Lord ELLENBOROUGH discussed the point whether the assignment passes the estate immediately to the assignees, defeasable upon their actual refusal to accept, or whether its effect was suspended until acceptance; and he came to the conclusion that the estate must necessarily remain in the bankrupt during the period of suspension, for it cannot be in abeyance, and must exist in some person.

Under our Revised Statutes there is a general provision requiring the assignees in insolvency to take an oath before proceeding to the discharge of their duties, similar to that mentioned in the 22d section of the act of 1813, with an additional provision as follows: " *The trustees taking such oath, shall be deemed vested* with all the estate, real and personal, by such debtors as follows: 3. In proceedings under the third, fifth and sixth articles, from the execution of the assignment in those articles directed." (2 R. S., 41, §§ 5 and 6.) Under these provisions it would seem to me that no estate absolutely vested in the assignees until they took the oath required by section five, and that the title must be deemed to remain in the insolvent during the period of suspension.

It will, I think, be difficult to give any other interpretation to the 22d section of the act of 1813. Its language is " that the assignee or assignees *shall before he or they enter upon the execution of the trust committed to him or them* take an oath." If the assignee does not take the oath, he cannot enter upon the execution of the trust. It is, in my opinion,

a pre-requisite to the complete vesting of the title in the assignee. It is as necessary as *an acceptance of the trust* by the assignee in bankruptcy, when that is necessary before the vesting of the bankrupt estate. And this should be so upon principle; for it would be absurd to consider the title in the assignee before he is qualified to take upon himself the execution of the trust. If the title to the lands in question was not vested in the assignee until he took the oath, then clearly it was not divested out of the insolvent.

2. It may be said, however, that it will be presumed that the assignee took the oath. This would, doubtless, be so if he had entered upon the discharge of his duties. We have no evidence whatever that the assignee took a single step under the deed of assignment. But if we are at liberty to indulge in presumptions that the assignee discharged his duty, then, I think, we are at liberty to go further and presume that he did his duty throughout the proceedings. As he never took possession of the lands in question, it may, perhaps, be inferred that the creditors, who proved their debts, were paid off without a sale of these lands. *After a second dividend, the creditors, who neglected to prove their debts, were debarred from claiming any share in the insolvent's estate,* and the title to the residue would, I think, on the expiration of the trust, revert to the insolvent without a reconveyance. (1 R. S., 730, § 67.)

3. It is, however, objected that presumptions will not be indulged, except for the purpose of supporting a possession. (*Adair* v. *Lott,* 3 Hill, 182.) While the rule may be recognized with propriety in this case, it must be applied in such a manner as not to overturn well established principles. In *Rosebaum* v. *Mosher* (2 Denio, 61), the defendant was permitted, as in this case, to show title out of the plaintiffs, by virtue of an assignment to assignees under the insolvent laws of 1811, although he did not assert any title for himself under the assignment. The only difference of importance between that case and this is, *that the defendant did not enter into possession of the lands under the plaintiff, nor under his title;* but he entered and held as owner. This, however, is a very important difference, and deserves careful considera-

tion. Suppose Mark Hoag had remained in possession after his discharge in 1830, for thirty years, claiming title, what would be the presumption as against the supposed outstanding title in his assignee? It would, doubtless, be presumed either that it never vested, or that it was extinguished. His continuing to deal with the land as owner, in a manner inconsistent with the existence of the trust estate, would, doubtless, disseize the trustee and create an adverse possession upon which the statute would operate so as to vest in him an undefeasable legal title. (Hill on Trustees, 267.) The remaining question is, whether Amos Hoag, having entered into possession under Mark Hoag and held under him, both before and after the assignment, without attorning to the assignee or changing his relations to his brother, Mark, in any respect whatever, can be permitted to avail himself of that possession to defeat the title under which he entered and retained the possession. While the defendants may doubtless set up an adverse possession against the assignee in insolvency, they cannot set it up against the plaintiffs, after acknowledging a tenancy. (*Jackson* v. *Davis*, 5 Cow., 129, 130; *Jackson* v. *Baird*, 4 Johns., 230.) If the defendants' possession was *adverse* to the title of the assignee in insolvency, it would inure to the benefit of the plaintiffs, instead of the defendants.

While I am of opinion that the title of the assignees in insolvency was not shown to be an outstanding subsisting title as against the plaintiffs, or their tenants in possession under them, after the lapse of twenty-five years, a state of facts may be presented upon a new trial, which would authorize the jury to presume that the defendants may, in some manner, have acquired the title of Mark Hoag, either by a conveyance from him or his assignee in insolvency.

But the case is too barren of facts to justify us in venturing upon a discussion of other questions, which may arise upon a new trial of the action.

The judgment should be reversed and a new trial ordered, costs to abide the event.

All the judges concurring in the result.

Judgment reversed, and a new trial ordered.