In the Matter of the Accounting of HANOVER BANK, as Trustee under the Will of RICHARD T. WILSON, Deceased.

Surrogate's Court, New York County, February 11, 1955.

*William G. Barr* and *Wolcott P. Robbins* for trustee, petitioner.

*Arthur F. Driscoll, Paul O'Brien* and *Milton Rosenblum* for Citizens National Trust and Savings Bank of Los Angeles, respondent.

*S. M. Chapin* and *Alvin McK. Sylvester* for Cornelius Vanderbilt, Jr., respondent.

*Hooker, Alley & Duncan* for United States Trust Company of New York and others, as executors of Grace G. Vanderbilt, deceased.

*Alfred M. Lindau* for Bertha P. Steuer, as trustee under the will of Max D. Steuer, deceased, respondent.

*Jeremiah M. Evarts* for Thomas F. McCoy, as receiver of property of Cornelius Vanderbilt, Jr., respondent.

FRANKENTHALER, S. The trust created for Grace G. Vanderbilt, daughter of the testator, has terminated and, under the terms of the will, the corpus becomes payable to her son and daughter. There is no question with respect to the one-half share payable to her daughter. The son, Cornelius Vanderbilt, Jr., has assigned all of his interest. That one-half share is claimed by his assignee under the terms of the assignment. It is claimed by the assignor on the theory that the assignment was given in trust for creditors, and has been extinguished by virtue of section 110 of the Real Property Law. A claim is also advanced by a receiver of his property appointed in an action in the Supreme Court, but the receiver's claim and the remainderman's challenge of that claim, await the determination of the effectiveness of the prior assignment.

The trust under the will of the testator was set up after his death in 1910. On or about June 29, 1928, Cornelius Vanderbilt, Jr., assigned to a California trust company all his right, title and interest in and to all property bequeathed to him under the will of this testator (his maternal grandfather), as well as all property given to him under the will of his paternal grandfather. The assignment is absolute on its face, and the voluntary execution of it is in no way questioned in this proceeding.

Thereafter the trust company executed a " Declaration of Trust " wherein it obligated itself to hold the assignment for the uses and purposes therein specified. The instrument recited Vanderbilt's inability to meet his obligations in full, the financial difficulties of a newspaper corporation of which he was the president, and the creation of the trust for the purpose of paying " certain of said creditor's claims ". The creditor-beneficiaries were divided into two classes: (1) individuals who rendered personal and professional services to Vanderbilt, and (2) individuals who were original subscribers to stock of the newspaper corporation and to whom Vanderbilt gave personal written guarantees, as well as certain other creditors specified in an exhibit annexed to the trust instrument.

The trust instrument was signed by the bank as trustee on December 1, 1928, at Los Angeles, California. There is annexed to the declaration of trust an instrument signed by the assignor

wherein he certified that it fully and accurately sets forth the terms and the trust under which the property therein mentioned is to be "held, managed and disposed of by the Trustee therein named", and he agreed, ratified, approved and confirmed the declaration of trust in all particulars. The certificate is dated June 29, 1928, and purports to have been executed by the assignor in Chicago, Illinois. There appears to be no dispute that in fact both the assignment and the assignor's assent to the trust instrument were executed in Chicago, and that at the time of making the assignment and the trust instrument, Cornelius Vanderbilt, Jr., was not domiciled in the State of New York. It is clear, therefore, that the only relation of the State of New York to the trust is that the property assigned consists of an interest in an estate of a New York resident.

Section 110 of the Real Property Law now reads: "Where an estate or interest in real property has heretofore vested or shall hereafter vest in the assignee or other trustee for the benefit of creditors, it shall cease at the expiration of ten years from the time when the trust was created, except where a different limitation is contained in the instrument creating the trust, or is especially prescribed by law. The estate or interest remaining in the trustee or trustees shall thereupon revert to the assignor, his heirs, devisee or assignee, as if the trust had not been created." At the time this declaration of trust for creditors was executed, the statute applied to personal property as well as real property (*Mills* v. *Husson*, 140 N. Y. 99; *Matter of Vietor*, 295 N. Y. 665; 1953 Report of N. Y. Law Revision Commission, Legis. Doc. No. 65 [c]). A recent amendment makes the statute inapplicable to a trust of personal property, but the amending statute explicitly states that it shall not revive any trust which had ceased on or before September 1, 1953 (L. 1953, ch. 131).

It is to be noted that the *validity* of the trust for creditors is not herein challenged under the law of any State. The only question at issue relates to the interpretation of the trust instrument, and particularly as to the term of the trust. Insofar as appears herein, the trust term is not affected by the law of any other State involved, i.e., domicile of assignor, place of execution or place of performance.

Section 110 of our Real Property Law does not prohibit the making of a trust which will last beyond the specified period. Unlike the rule against perpetuities, it does not fix a statutory limit for all such trusts. Indeed, section 110 explicitly recognizes

the right of the parties to specify any trust term they desire. The statute was enacted in 1875, as an amendment or clarification of the section (now § 109) which sets forth the general rule that when the purpose for which any express trust is created shall cease, the estate of the trustee shall also terminate. (1953 Report of N. Y. Law Revision Commission, Legis. Doc. No. 65 [c].) The principal purpose of section 110 was the " removal of clouds on title arising from the recording of a conveyance creating a trust to sell real property and distribute proceeds to creditors " (1953 Report of N. Y. Law Revision Commission, Legis. Doc. No. 65 [c], p. 6, *supra*). It seeks to accomplish that purpose by fixing a time when the trust is deemed at an end unless a trust period is specified in the trust instrument.

The question before the court, therefore, is the interpretation of the trust instrument, read in the light of applicable law, with respect to the term for which the trust is to continue. If the law of New York applies, then the period of ten years would be read into the trust instrument unless the instrument itself expressly or by necessary implication fixes a different term. If the law of New York does not apply, it seems that no definitive term for the trust is fixed or presumed by any other law.

The law of New York does not prohibit the assignment of remainder interests and it does not place any restriction on the purpose for which a remainder interest may be assigned. Since our law does not prohibit the assignment of remainder interests to a trustee, our public policy is not concerned with the manner in which a foreign trust is thereafter administered. Under such circumstances, the law of New York would not ordinarily govern the construction of a trust deed of personal property, executed without the State by nonresidents of the State, and providing for an administration outside the State. Section 110 of the Real Property Law could hardly have been intended to affect such a trust of personal property. As now amended, it does not affect trusts of personal property at all except such as might have been terminated prior to the amendment. There is, therefore, no public policy of this State which would require us to extend the terms of section 110 to trusts of personal property executed outside the State by nonresident parties, and which are to be administered outside the State, particularly where our laws have not given preferred rights in the same property to other creditors.

However, it seems to the court that even if section 110 would apply to such a trust, the terms of this trust instrument make it clear that the parties intended that the trust is to continue until the trustee actually receives funds from this estate or until this estate was otherwise distributed. The trust instrument recites that the only property transferred are the interests in the two particular estates and it states that the " said inheritances are not due and may not become due and payable by the terms of said wills ". Thus it was recognized by all parties that events thereafter transpiring might result in the distribution of the property to others than the assignor.

The instrument provides: " It is an express condition of this Trust that the Trustee shall not be responsible nor assume any liabilities for the nature, value or extent of its title to said inheritances, nor for any adverse or conflicting claims of interest therein of other persons, nor for the value, validity or collectibility of same, but that its only liability shall be *for such property and sums of money as it may collect and receive by reason of such assignments.*" (Emphasis supplied.)

The instrument provides for the filing of claims and their approval by the assignor within a time fixed in the instrument. With respect to payment, it requires the trustee upon " the payment to and receipt by said Trustee of said inheritances under either or both of said Wills aforesaid " to divide the moneys " so received by it " into one hundred parts. Thirty of the parts are to be distributed proportionately to the beneficiaries under Class 1 and seventy parts to the beneficiaries in Class 2. The instrument requires that each of the claimants who files a claim shall expressly waive " all other rights and remedies " except those conferred by the trust agreement. Moreover, the beneficiaries in Class 2 are required to file a general release to the newspaper corporation and its officers and directors.

The trustee is required to issue to each claimant whose claim has been approved within the time limited therefor, its certificate of the amount due such claimant beneficiaries from " the funds received from said inheritances herein described and set aside for that purpose as herein provided, *as and when the same have been paid to and received* by said Trustee." (Emphasis supplied.)

The form of the certificate to be issued by the trustee is fixed in the trust indenture. That certificate must state the amount of the approved claim and it shall certify that the claimant is

entitled to a specified amount of the funds set aside for the claimant of that class " as and when the same becomes due and payable as per the terms and conditions contained " in the trust instrument. The certificate must also state that the claimant " fully understands that there are no moneys and/or properties in the hands or possession of the Trustee, and that the corpus of the trust estate herein referred to consists wholly of the expectancies and choses in action by reason of certain assignments of Cornelius Vanderbilt, Jr., in and to certain inheritances under the Wills of the late Richard T. Wilson and Cornelius Vanderbilt, and that said inheritances are not due and may not become due and payable by the terms of said wills which is more particularly set out in Trustee's Declaration of Trust No. ————.''

With respect to the administration and payment of the funds, the instrument provides for disbursements after receipt and acceptance by the trustee of any money or property by reason of the assignment of inheritances. It provides that after payment of the claims, the remainder, if any, of the trust funds are to be paid over and delivered to the assignor or to his legal representatives.

The entire trust instrument plainly evidences the intent of the assignor, the trustee and the creditor-beneficiaries who accept its provisions, that the trust is to continue until there has been complete distribution under both wills and for such additional reasonable period of time as is required by the trustee to collect, divide and pay. It would be unreasonable to suppose that the creditors would give up all their rights and remedies and allow their claims to grow stale and unenforcible in return for a trust of contingent interests that was to run for a limited time. Even independently of a statutory presumption such as that prescribed in section 110 of the Real Property Law, the courts have ruled that the lapse of a period of time would justify the presumption that the debts were discharged and the trust executed (*Kip* v. *Hirsh,* 103 N. Y. 565, 570; *Hoag* v. *Hoag,* 35 N. Y. 469, 476). Yet such a presumption could not fairly be made when the instrument itself fixes the time for payment upon the happening of an event which is still in the future.

The trust instrument, read in the light of section 110, contains " a different limitation ", namely, a reasonable period after the distribution of this estate, and the trust term prescribed in section 110 does not, therefore, apply.

The court holds that the one-half share that would be payable to Cornelius Vanderbilt, Jr., under the terms of the will of this

testator is payable to the Citizens National Trust & Savings Bank of Los Angeles, in accordance with the terms of the assignment. The objections of Cornelius Vanderbilt, Jr., are overruled.

Submit decree on notice settling the account accordingly.