OPINION OF THE COURT
Jeremiah J. Moriarty, J.
Pursuant to a permit executed in 1963, the New York State Thruway Authority authorized the State of New York (Office of General Services) to use and occupy four lots, located beneath the Niagara section of the New York State Thruway in downtown Buffalo, New York, for parking motor vehicles. On October 12, 1973, the State entered into an "Agreement for Commercial Parking Operation” (Agreement) with the claimants, Peter N. Lahti and Louis J. Tripi, doing business as Terrace Parking, which authorized claimants to conduct a parking operation on this land, on evenings and weekends, from October 12, 1973 to September 30, 1976, for an annual payment of $21,212.[1]
In September of 1974, the State commenced repair work on the Buffalo Skyway, a limited access highway which passes over a portion of the lots utilized by the claimants for their commercial parking operations. Shortly thereafter, the State Labor Department, Division of Industrial Safety, ordered that a portion of what is designated by the Agreement as lot 3 be barricaded off to prevent the hazard that could ensue from falling debris. Subsequent to this order, a barricade was erected preventing usage of a portion of lot 3. Claimants contend that this barricade was erected on or about October 1, 1974 and remained in place until September 30, 1976, the date *831 their contract with the State expired. Arguing that the barricade deprived them of the use of approximately 20 parking spaces during this period, the claimants filed a claim with this court on September 29, 1977, seeking compensation for a de facto, temporary, partial appropriation of an interest in land by the State.
In response to this claim, the State filed a motion to dismiss. The elements of the motion are threefold; failure to file a timely claim in accordance with subdivisions 1 and 4 of section 10 of the Court of Claims Act and CPLR 3211 (subd [a], par 2); failure to state a cause of action pursuant to CPLR 3211 (subd [a], par 7); and upon documentary evidence pursuant to CPLR 3211 (subd [a], par 1).
To resolve the issue of the timeliness of the within claim, we must first determine whether, upon the evidence before the court, claimants have successfully stated a cause of action for the appropriation of an interest in real property. The import of whether they have an interest in land, or a right enforceable in contract, is that the Statute of Limitations for appropriation of land is three years from the accrual of the claim, while an action for breach of contract has a Statute of Limitations of six months from the accrual of the claim (see Court of Claims Act, § 10, subds 1, 4, respectively). Assuming that the claim did in fact accrue on October 1, 1974, when the claimants allege that the barricades were erected, a claim filed with the court on September 29, 1977 would fall within the jurisdictional provisions of subdivision 1 of section 10. However, if this were an action for breach of contract governed by subdivision 4 of section 10, the court would be without jurisdiction over this claim. Thus, a determination of which jurisdictional statute is applicable is dependent upon the nature of claimants’ interest in the property.
The State argues that the Agreement between itself and claimants created a mere license and that the claimants do not have an interest in land subject to appropriation. Thus, if claimants have a cause of action against the State, it is for breach of contract. Contrary to the State’s construction of the Agreement, the claimants argue that it created a property interest in land subject to appropriation, the taking of which requires compensation.
A license has been defined as "a privilege to do one or more acts upon land, without having an interest therein, which, as a general proposition, is personal to the licensee, is not *832 assignable by him, and is revocable by the licensor.” (17 NY Jur, Easements and Licenses, § 194.) On the basis of the affidavits, briefs and exhibits submitted herein, the court concludes that the claimants are licensees, and thus lack an interest in land which is subject to compensation for appropriation.
First, the terms of the Agreement support this conclusion. The Agreement articulates that it is the State’s desire to "license” the property. In clause 1, the right that is granted is called a license. Clause 2 addresses the times during which the operator may exercise the license. All other provisions of the Agreement refer to the right that is granted as a license. Although the terms of an agreement are not conclusive as to the nature of the interest created (Lordi v County of Nassau, 20 AD2d 658, affd 14 NY2d 699), they may be indicative of the intent of the parties which should control the substance of what is created. (Almota v Farmers Elevator & Warehouse Co. v United States, 409 US 470; Brooklyn Eastern Dist. Term, v City of New York, 139 F2d 1007; cf. Conard, An Analysis of Licenses in Land, 42 Col L Rev 809.)
Second, the nature of the rights granted to the claimants are more akin to the rights of a licensee than those of a lessee, or franchisee, who would have a compensable property interest. The claimants were only granted a part-time use of the property, clause 2 of the Agreement restricts usage to weekends and evenings. Therefore, claimants are lacking the exclusive possession of property required to create a lease. (Miller v City of New York, 15 NY2d 34; Janoff v Sheepshead Towers, 22 AD2d 950, affd 16 NY2d 949; Greenbro Coin Meter Corp. v Basch, 205 Misc 853.) The claimants are only authorized to use the property for commercial parking, as stipulated in the Agreement. They are without authority to use the property in any other manner. Where a limited right to do one or more acts upon property is granted, the courts have usually found that a license, and not a lease, has been created. Thus, in Schusterman v C & F Caterers (192 Misc 564), a plaintiff who had entered into a "lease” with the defendant to operate a coat check in a portion of the basement of the defendant’s building was considered to be a mere licensee. Similarly, in Kaypar Corp. v Fosterport Realty Corp. (1 Misc 2d 469, affd 272 App Div 878) and Isaacson v Ken Drug Corp. (195 Misc 246) the courts held that where a right was granted to utilize property for a specific purpose, title remaining in the *833 defendant, no property interest in the plaintiffs was created. Claimants in this action, like the plaintiffs in Schusterman, Kaypar and Isaacson, were only granted the privilege to conduct a specific operation upon the premises of another.
A third factor which supports the conclusion that the claimants are mere licensees is the termination clause, section 4 of the Agreement. According to this provision, the State reserved the right to revoke the "license” without cause, upon 15 days’ notice without accruing any liability. A lease or franchise usually cannot be revoked at will but only for cause.[2]
In light of the afore-mentioned factors, the claimants would appear to be licensees without an interest in land subject to appropriation and claimants have not presented any evidence, or cited any authority, which would warrant a contrary conclusion.
The case of Danolds v State of New York (89 NY 36), relied on by the claimants, does not support a finding of a property interest in land on the present facts. In Danolds, the plaintiff had contracted with the State to build a State reformatory at Elmira. After part of the construction was completed, the State was forced to halt further operations. When construction was resumed, the State granted the contract to a builder other than the plaintiff. The plaintiff brought an action for breach of contract, seeking damages equal to the amount of prospective profits that would have been received if the work were fully performed. The court found for the plaintiff on the basis that, under the terms of the contract, the State did not reserve the power to destroy the contract without liability. Plaintiff was considered to have a property right in the contract. As the State in its reply memorandum concedes, there is no question that a contract can constitute a property interest. However, the property interest created by the Agreement is not an interest in the land. Even though the contract itself constitutes a form of property, it is not an interest in real property necessary to invoke the provisions of subdivision 1 of section 10. The claimants’ remedy, similar to Danolds, is for breach of contract pursuant to the provisions of subdivision 4 of section 10.
Claimants also rely on Dixon v State of New York (4 Misc 2d 76) for the proposition that less than a fee estate in land *834 may constitute an interest in property. Again, there is no serious dispute as to this proposition. However, the facts in Dixon which supported an award for appropriation of land are significantly different from those presented by the instant claim. In Dixon, the State appropriated land from the Onondaga Indian Reservation. The claimant, a member of the Onondaga Nation of Indians, had been granted exclusive life possession of part of the lands appropriated. The rights acquired included the ability to transfer the property to another member of the tribe, to lease the property to a white man for a period not to exceed 10 years, or the right to remain in exclusive posqgssion of the land for the duration of his life. On these facts the Court of Claims found that there was a sufficient interest in land to warrant compensation.
In the instant case, the claimants’ rights in connection with the property are severely limited. The claimants only had a contractual right to utilize the property for a period of less than three years, and they did not have the right to subcontract their operations without the consent of the State. Further, the claimants did not have the same unrestricted use of the property as evidenced in Dixon. In conclusion, the claimants do not fall within the factual setting of Dixon.[3]
With regard to that portion of the State’s motion which seeks dismissal based upon documentary evidence (CPLR 3211, subd [a], par 1), the primary thrust of the argument is based upon clause 3 of the permit between the New York State Thruway Authority and the State of New York. That clause reserved to the Thruway Authority access to the land subject to the Agreement for the purpose of making repairs, etc., to the overhead Thruway and it reserved the authority’s right to "close such areas designated by the Authority as needed by it for those purposes.” The permit was expressly made a part of the "Agreement” between the State and claimants. State argues that since the barricades were erected by it for highway repair purposes, those acts were done pursuant to clause 3. But clause 3, by its express terms, only gives the Thruway Authority, not the State, the right to close designated areas. The State and the Thruway Authority are entities wholly independent of each other. The State has *835 shown no evidence, nor cited any authority, pursuant to which it derives a right to close a portion of the lands licensed to claimants, without answering in damages.
The foregoing discussion makes it abundantly clear that, while claimants have failed to state a cause of action upon the pleadings currently before the court, a claim does exist for breach of contract,[4] the ultimate merits of which cannot be resolved at this point. In this regard, we note that a motion under CPLR 3211 (subd [a], par 7) for failure to state a cause of action, unlike the common-law demurrer "is no longer limited to a consideration of the pleading itself but may consider extrinsic matter submitted by the parties in disposing of the motion. (4 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3211.43; Hamilton Print. Co. v. Payne Corp., 26 A D 2d 876.) The inquiry is whether the pleader has a cause of action rather than whether he has properly stated one. (6 CarmodyWait 2d, New York Practice, § 38:19.)” (Kelly v Bank of Buffalo, 32 AD2d 875; see, also, Seigel, New York Practice, § 265.)
As noted above, subdivision 4 of section 10 of the Court of Claims Act requires that a claim, or notice of intention to file a claim, for breach of contract must be filed within six months after the accrual of such claim. Whether we construe the claim to have accrued on September 13, 1974, the date of the inspection by the State Labor Department, October 1, 1974, the date that the barricades are claimed to have been erected, March 1, 1976 or September 30, 1976, the dates on which the State and the claimants allege, respectively, that the barricades were removed, the claim would be barred by subdivision 4 of section 10, since all four dates are more than six months prior to the filing of this claim on September 29, 1977.
The question is thus presented whether the dismissal of the within claim should be with, or without, prejudice to a subsequent application for permission to file a late claim pursuant to section 10 of the Court of Claims Act. This issue revolves around a determination of the applicability of the recent amendments to section 10 which added subdivision 6 thereto (eff Sept. 1, 1976), and increased the time within which to bring on such a motion, and expanded the court’s discretion in its consideration thereof. Such a determination, *836 in turn, resolves itself upon a determination of the date the instant claim accrued.
It has been recently held that subdivision 6 of section 10 must be given a limited retroactive effect as to those claims which, on the effective date of the amendment, were not beyond judicial recall (Sessa v State of New York, 63 AD2d 334; Fuoco v State of New York, 64 AD2d 1030). Since former subdivision 5 of section 10 permitted entertainment of motions to late file not later than two years after the accrual of the claim, those claims which accrued prior to September 1, 1974 were beyond judicial recall on the effective date of the amendment to section 10, and are not entitled to consideration pursuant to the more liberal standards embodied in the amendment. Since each of the accrual dates postulated by the parties hereto is subsequent to September 1, 1974, under any formulation of the facts on this record, the claim for breach of contract was not beyond judicial recall on September 1, 1976, and subdivision 6 of section 10 is applicable to a subsequent motion for permission to file a late claim. Further, claimants have, at the least, six years from September 13, 1974 (the earliest accrual date suggested herein), or until September 13, 1980, to move for such permission (CPLR 213, subd 2; Court of Claims Act, section 10, subd 6). We do not, at this point, pass upon the merits of such a motion, and we reserve any further discussion thereof until the parties have had the opportunity to fully explore the various factors they may wish to bring to the attention of the court.
Based upon the foregoing, this motion is disposed of as follows, and it is
Ordered, that the State’s motion to dismiss Claim No. 61476 for failure to timely file be, and hereby is, granted, and the clerk is directed to enter judgment dismissing said claim, and it is further
Ordered, that in all other respects the State’s motion is denied; and it is further
Ordered, that the dismissal of Claim No. 61476 be without prejudice to a subsequent motion by claimants for permission to file a late claim in accordance with this memorandum decision, if they are so advised.

. The consideration of $21,212 was for the use of approximately 220 parking spaces.

. If the State reserves the right to revoke without cause, upon notice, it must abide by the notice provisions. (Melodies, Inc. v Mirabile, 7 AD2d 783.)

. Also cited by claimants, and similarly distinguishable, are Brooklyn Eastern Disk Term, v City of New York (139 F2d 1007, supra) and United States v 53¼ Acres of Land (139 F2d 224).

. The court has considered the other arguments raised by the State in opposition to this point and, upon this record, finds them to be without merit.