H.J.L., L.P., )
)
)
    Plaintiff-Appellant, ) Appeal No.
) 01A01-9811-CH-00589
)
v. )
) Davidson Chancery
NASHVILLE & EASTERN RAILROAD )
CORPORATION AND NASHVILLE AND )
EASTERN RAILROAD AUTHORITY, )
)
    Defendants-Appellees, )

**FILED**

July 16, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR


DAVID B. HERBERT
ORTALE, KELLEY, HERBERT & CRAWFORD
Third floor, Noel Place
200 fourth Avenue North
P.O. Box 198985
Nashville, Tennessee 37219-8985
    Attorney for Plaintiff-Appellant

DAVID W. LAWRENCE and R. DAVID ALLEN
108 North Greenwood Street
Lebanon, Tennessee 37087
    Attorneys for Defendant-Appellee Nashville & Eastern Railroad Corporation

WILLIAM E. FARMER
104 W. Main Street, P.O. Box 2429
Lebanon, Tennessee 37088-2429
    Attorney for Defendant-Appellee Nashville and Eastern Railroad Authority


AFFIRMED IN PART, REVERSED IN PART, AND REMANDED



HERSCHEL P. FRANKS, JUDGE


CONCUR:
GODDARD, P.J.
SUSANO, J.

In this action, plaintiff sought the continuing use of a railroad underpass. The Chancellor granted defendants summary judgment, and plaintiff has appealed.

Plaintiff H.J.L., L.P., is a limited partnership created by the Eakes family. The Eakes own a farm used for breeding walking horses. In 1980, the Eakes purchased approximately eighteen acres from Donald O'Guinn. They purchased an adjoining fourteen acres from Mark Parrish in 1982. These tracts were deeded to H.J.L. in 1993.

The property is bordered on one side by the Cumberland River, and on the other by railroad tracks. Defendant Nashville and Eastern Railroad Authority ("Authority"), a governmental entity, owns the railroad right-of-way. The Authority leases the property to defendant Nashville & Eastern Railroad Corporation ("Corporation"). Under the lease, the Corporation has full authority to use, manage and maintain the property.

At issue in this case is a trestle located near the end of Guaranty Drive in Davidson County. Guaranty Drive ends several feet before the trestle. The area underneath the trestle is not a public road. The Eakes used the area underneath the trestle to reach the property they purchased from O'Guinn and Parrish, although the frequency of their use is disputed. The Eakes also have access to the property from Barker Road, approximately 3,200 feet to the north. This access is not as direct and requires their crossing of other property owned by them to reach these tracts.

In November 1991, the Corporation notified the Eakes that the trestle was in need of repair. The Corporation informed the Eakes that it intended to fill the area underneath the trestle unless the Eakes paid for certain construction costs to keep the underpass open. The Eakes refused and the Corporation filled in the trestle.

H.J.L. filed suit on December 16, 1993, and the defendants counter-claimed, alleging that one of the Eakes' fences encroached upon the right-of-way. The Chancellor

denied H.J.L.'s Motion for Summary Judgment on its claims of equitable estoppel and inverse condemnation, and granted defendants Motion for Summary Judgment. The Chancellor also denied defendants' Motion for Summary Judgment on the issue of encroachment, and granted summary judgment to plaintiff on that issue.

When evaluating a motion for summary judgment, the Trial Court should consider "(1) whether a factual dispute exists; (2) whether the disputed fact is material to the outcome of the case; and (3) whether the disputed fact creates a genuine issue for trial." *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). On appeal, no presumption of correctness attaches to a summary judgment involving only a question of law. *Hembree v. State*, 925 S.W.2d 513 (Tenn. 1996). T.R.A.P. Rule 13(d). We are required to view the evidence in the light most favorable to the opponent of the motion and all legitimate conclusions of facts must be drawn in favor of the opponent. *Gray v. Amos,* 869 S.W.2d 925 (Tenn. App. 1993).

Plaintiff argues that it is entitled to an equitable easement under the trestle. There is no recorded document granting plaintiff access. The plaintiff contends, however, that defendants are estopped from denying the existence of an easement. The elements of equitable estoppel are set forth in *Consumer Credit Union v. Hite,* 801 S.W.2d 822, 825 (Tenn. App. 1990):

> The essential elements of an equitable estoppel as related to the party estopped are said to be (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts. As related to the party claiming the estoppel they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially, 19 Am.Jur.Estoppel Sec. 42, pp. 642-643.

(*citing Callahan v. Town of Middleton*, 792 S.W.2d 501 (Tenn. App. 1954)).

The Authority which owns the land is a government entity, and the doctrine of equitable estoppel generally does not apply to the acts of public officials or public agencies. *Bledsoe County v. McReynolds*, 703 S.W.2d 123 (Tenn. 1985). "Public agencies are not

subject to equitable estoppel or estoppel in pais to the same extent as private parties and very exceptional circumstances are required to invoke the doctrine against the State and its governmental subdivisions." *Id.* at 124. In the cases where equitable estoppel has been applied against a public body, "the public body took affirmative action that clearly induced a private party to act to his or her detriment, as distinguished from silence, non-action or acquiescence." *Id.* at 125.

Plaintiff concedes it did not discuss the issue of access through the trestle with anyone before purchasing the property. It argues, however, that defendants engaged in sufficient affirmative conduct to invoke the doctrine. First, plaintiff cites the fact that the trestle was continuously maintained. It appears from the record that this maintenance was undertaken primarily to preserve the structural integrity of the trestle, which was necessary, regardless of whether private citizens used the underpass. The plaintiff also cites the 1977 "Agreement" between the defendant's predecessor and landowners concerning sharing the cost of maintaining the trestle. This agreement was never consummated, because one of the parties withdrew. The proposal was not sufficient affirmative conduct to invoke the doctrine. Thus, plaintiff had, at most, a license to use the trestle.

Plaintiff argues that if it only had a license, the license was irrevocable. A license is generally revocable at the will of the licensor. 25 Am.Jur.2d *Easements and Licenses* §143 (1996). A party may, however, be estopped from revoking a license, when a licensee has made valuable improvements or incurred expenses in reliance upon the license. *See Daughterty v. Toomey*, 222 S.W.2d 195 (Tenn. App. 1949). The Oregon Supreme Court has held that this exception "does not apply where the landowner has not given express permission, but has merely silently acquiesced or failed to object to the improvements." *Brusco Towboat Co. v. State,* 589 P.2d 712 (Or. 1978). Moreover, holding the license irrevocable would require applying the doctrine of estoppel which, as we have noted, is not applicable in this case.

Plaintiff also cites an older version of the Tennessee Code to support its position. This statute states that "[w]hen land on both sides of the track is owned by the same

4

proprietor, convenient crossing shall be made and kept up at the expense of the corporation for the use of said proprietor, and all necessary cowgaps made." *Shannon's Code of 1896*, §2419 (1918). Although not cited by either party, the current version of this statute is T.C.A. §65-18-106. This particular chapter addresses incline railroad companies.

The statute does not entitle plaintiff to relief. The record is not entirely clear concerning who owned the property at issue when the trestle was constructed. Dolly Williams stated that her father purchased the property in 1923, and Williams also testified about a trestle on the property, although it is not entirely clear if she was referring to the trestle at issue in this case. The record also indicates that the trestle may have been in existence as early as 1918. Assuming, *arguendo,* that the trestle was constructed when the property on both sides of the track was owned by one person, the property was subdivided in the 1950's. Thus, the land on both sides of the track was no longer owned by the "same proprietor". The plaintiff did not own the land on both sides of the track when he purchased the property, and the plaintiff has access to its property through an underpass located at Barker Drive. For the foregoing reasons, we affirm the judgment of the Chancellor on this issue.

The Trial Court granted summary judgment to defendants on the issue of inverse condemnation. The Authority argues the Chancery Court lacked jurisdiction to decide this issues. Jurisdiction for condemnation and inverse condemnation suits is conferred upon the Circuit Courts and not upon the Chancery Courts. *McLain v. State*, 442 S.W.2d 637 (Tenn. App. 1968). In *McLain*, the court held the Chancery Court had jurisdiction over a suit for both the reformation of a deed and inverse condemnation. In *Evans v. Wheeler*, 348 S.W.2d 500, 502 (Tenn. 1961), the court determined that since the plaintiff had sought an injunction, the Chancery Court retained jurisdiction "insofar as the case turned into eminent domain proceedings." In this case, plaintiff sought to enjoin defendants from preventing its use of the trestle, and sought an equitable easement in addition to the inverse condemnation claim. These claims were disposed of in a single judgment by the Chancellor. Accordingly, the Chancellor has jurisdiction over all claims.

5

Plaintiff argues that the Chancellor erred in granting summary judgment on the inverse condemnation claim. "Inverse condemnation is the popular description of a cause of action against a governmental defendant to recover the value of the property which has been taken in fact by a governmental defendant even though no final exercise of the power of eminent domain has been attempted by the government." *Johnson v. City of Greeneville*, 435 S.W.2d 476, 478 (Tenn. 1968). T.C.A. §29-16-123 governs such actions.

The Chancellor properly granted summary judgment. Plaintiff has no legal title to the path under the trestle. Additionally, the path is not a public road. As noted, the plaintiff enjoyed at most a license to use the path. Other jurisdictions have held that the holder of a license is generally not entitled to compensation for its appropriation. *See Acton v. United States*, 401 F.2d 896 (9th Cir. 1968), *cert. denied,* 393 U.S. 1121 (1969) and 395 U.S. 945 (1969); *Tidwell v. State ex rel. Herman*, 514 P.2d 1260 (Ariz. App. 1973); *Lahti v. State*, 414 N.Y.S.2d 607 (N.Y.Ct.Cl. 1979); *Lee v. North Dakota Park Serv.*, 262 N.W.2d 467 (N.D. 1978); *City of Norwood v. Forest Converting Co.*, 476 N.E.2d 695 (Ohio App. 1984); *See generally* 26 Am.Jur.2d, *Eminent Domain* §282 (1996).

T.C.A. §65-6-119 authorizes defendants to fill in their trestles as necessary, and we affirm the Chancellor on this issue.

Defendants filed a counter-claim against plaintiff for encroachment. The defendants alleged that a fence constructed by plaintiff encroaches upon the railroad right-of-way, and moved for summary judgment on the encroachment issue. Summary judgment was granted to plaintiff on this issue, but we vacate and remand.

Roger Fuqua, a licensed surveyor, prepared a survey that shows a fence encroaching upon the right-of-way. The plaintiff argues that it did not construct this fence. Hoyt Eakes stated, however, that he built a fence running to the left and right of the trestle. Although it is not entirely clear from his testimony if the fence he built is the same one encroaching on the property, the testimony creates an issue of material fact which is not suitably resolved by a summary judgment. Accordingly, we remand to the Trial Court to resolve this issue.

The judgment of the Trial Court is affirmed in part and reversed in part, and the cause remanded, with cost of the appeal assessed to the appellant.

_____
Herschel P. Franks, J.

CONCUR:


_____
Houston M. Goddard, P.J.




_____
Charles D. Susano, Jr., J.

7