Howard v. Massengale.

SALLIE E. HOWARD v. H. W. MASSENGALE et al.

1. TITLE. *Common source.* It is only necessary for a plaintiff in ejectment to deraign his title from the person under whom it is proven the defendant claims.

2. EJECTMENT BILL. *Outstanding title.* The outstanding title, which will defeat a plaintiff in ejectment, must be a present, subsisting, operative and available title, not one reverted, abandoned or barred.

3. TITLE BY ESTOPPEL. A made deed of conveyance to C, reciting therein that he had previously conveyed same land to B, who had conveyed it to C; B had just before given C a statement in writing that he had given or deeded the land to C. Neither deed was registered, nor was there any other proof of the existence of either. *Held*, that B and A were both estopped to deny title in C, and that C would therefore recover in equity against persons not claiming under B, but by title adverse to his.

4. IMPROVEMENTS.  *Who entitled to.  Measure of value.*  Constructive notice by registration of adverse title will not defeat claim for improvements by party holding under color of title, without actual knowledge of registered title.  Improver is entftled to full value of betterments at date of surrender or sale, to be ascertained by report, or to relative value to be shown by report and sale, at the election of the title holder.

FROM HAMILTON.

Appeal from the Chancery Court at Chattanooga. W. M. BRADFORD, Ch.

DODSON & MOON for complainant.

KEY & RICHMOND for defendants.

INGERSOLL, Sp. J., delivered the opinion of the court.

This is an ejectment bill to recover about six acres of land on Lookout Mountain, valuable as a summer resort.  The answers of defendants rely upon title in themselves, want of title in complainant, and outstanding title in a third party.  It is clearly proven that all parties claim title under one Foster, who is admitted to have been the owner in 1849.  It is not necessary, therefore, for either party asserting title to deraign it from the State: 3 Head, 8, 468; 6 Baxt., 114; 2 Greenl. Ev., sec. 307.

The question for determination is, who has obtained Foster's title?

It appears that in 1851 two Georgians, defendant Massengale and Dr. Avery, father of complainant, engaged in business together in Chattanooga, and so continued for about two years, when Avery returned to

Georgia. They summered together two years on Lookout, in 1852 and 1853. In 1852 one Moody Burt, brother-in-law of Avery, spent a few days with the family on the mountain on a visit, at which time it is alleged that he bought the land from Foster, who then occupied it but removed from it to a house on the summit one-quarter of a] mile distant, where he summered in 1853, Avery occupying the old house that year. In 1852 also, and shortly after Burt's visit, Massengale built a house and shed on the upper end of the lot and enclosed them with a fence, and occupied them every summer until 1862, when the improvements on the land were all destroyed; none were replaced, nor was the land occupied by any one until after the purchase by respondents in 1877. The evidence leaves it in doubt whether Massengale bought or leased the ground on which he built; one of complainant's witnesses—her mother—deposing that he built and occupied under lease or license from Burt, and the other, a former slave of Massengale, that he bought from Foster a part of the lot and always claimed it as his own as long as he lived there, recognizing Foster as the owner of the lower part of the lot. The asserted purchase gains credence from the fact that Massengale buried a brother and child on the lot within his enclosure; but the presumption from this fact is fully offset by the conspicuous absence of Massengale's testimony as to the manner of his holding, and character of his title, if he had any. His only declaration in writing in regard to it is to be found in the following recital in his deed December 28, 1877,

to defendant Graham, under whom all defendants claim title: "I bought this tract of land in the year 1851, and had warranty deed from George D. Foster, having paid him the sum of $500 in full. This deed was lost during the war. I lived on said land eleven years, and have had peaceable possession of the same for twenty-six years."

His deposition to that effect would have resolved all doubt on this point, and possibly, with the evidence offered by complainant, would have vested him with title by seven years occupation under color. Defendants insist that complainant, having introduced this deed of Massengale to Graham, is bound by all its recitals; and thus is established against her the conveyance by Foster to Massengale in 1851, a year before the alleged purchase of Burt. We know of no such rule of evidence, but do recognize as correct the rule stated on the previous page of brief for defendants: Recitals in a deed are not evidence of the fact, when the fact requires proof, unless made so by statute. Complainant offered a deed to show the admission of Massengale that he claimed under Foster, which some of the answers had denied. No rule of evidence binds the party offering the admissions of his adversary to all he said at the time as truth. The fact requiring proof here is the conveyance by Foster to Massengale. The recital in the deed of Massengale to Graham is not evidence of the truth of his claim to title any more than would be an oral declaration to the same effect.

Failing to prove even color of title in Massengale,

during his occupation, defendants have failed to establish title in themselves. The ten years of occupation under claim of title by him matured only a defensive, possessory right, which after fifteen years was entirely gone from him and not transferable to Graham by the deed he made in 1877. Defendants, according to the record, have no title to the land in controversy. Has complainant?

In proof of her title she produces the deed of Foster of date, April 14, 1873, duly acknowleged and registered same day, conveying to her the land claimed in the bill. No one was then in possession of the same, and the objection of champerty is unavailing. So far as appears in this record, this was the first deed to this land registered after that to Foster, in 1849.

The description of the land, as proven by the surveyor, leaves no room for doubt or mistake as to the identity with that sued for. This sufficient deed of conveyance, duly acknowledged and registered, from the recognized owner to the complainant vests her with title to the land, unless there is something infirmative in it or in the proof *aliunde* in the record.

After a preamble reciting the purchase by Foster of the land and a description thereof the deed proceeds: "And whereas, the said Whiteside, Glass and Rogers conveyed the same to me by deed, bearing date in 1849, which was registered in book I, in the register's office of Hamilton county, which book has been lost, or cannot be found, and the said deed to me has also been lost; and whereas, I sold and con-

veyed said land to Moody Burt, of Columbia county, and the said Moody Burt conveyed said land to Sallie A. Avery, now Sallie A. Howard, wife of Wm. H. Howard, of DeKalb county, Georgia; now, therefore, I do hereby transfer and convey said land in consideration of the premises, to the said Sallie A. Howard, her heirs and assigns, and vest the title to the same in fee to her." Then follow covenants of title, of right to convey, against encumbrance, and of general warranty.

Upon these recitals in complainant's deed, defendants predicate their defenses of want of title in complainant, and outstanding title in Burt, either of which is as effectual to defeat complainant as title in the defendants.

The reason or motive for this unusual mode of conveyance does not appear in proof, neither complainant nor Foster deposing in the case. The Referees attach much significance to this omission, especially as they infer from the record that Foster was within the jurisdiction of the court within the month next preceding the hearing of the cause in the chancery court.

A careful examination of the transcript satisfies us that this inference is based on the misprision of the clerk, or of the register, in copying the deed and acknowledgement of Foster to complainant, in 1873, thus showing the acknowledgement by him in Hamilton county in 1883, only twenty days before the decree, while the original in the record shows it to have been in 1873, a mistake of ten years. Whether Foster is dead or alive is not inferable from anything in the

record. Burt and complainant's father are dead. If Foster were alive, he could prove whether he made a deed to Burt; and if he did, why he made this one to complainant, but not, as is fairly inferable, whether Burt made one to complainant. His deed to complainant shows conclusively as to him that he had made the deed to Burt; and this is the only fact of importance to defendants that his evidence would establish. Nothing unfavorable to complainant, therefore, can be inferred from the absence of Foster's deposition. Complainant was only six years old at the date of the alleged conveyance to Burt, and but thirteen at the alleged date of the gift by Burt to her in 1859. Of the first deed she could not be presumed to have any knowledge. Of the latter she may have known, or may not. Whether she did or not, her deposition would have shown. From its absence it is fairly inferable she had no personal knowledge of the alleged deed to her by her uncle, Moody Burt, and we must look elsewhere for proof of it. Why Foster made the deed to complainant, though not so material, is surely a pertinent inquiry. The reasons for it appear in the record with almost as much perspicuity as his deposition could give. His own deed and the record-book, wherein it was registered, was lost; so was his deed to Burt, and also Burt's deed to complainant, if he ever made one. Complainant had absolutely no muniment of title. He believed that she had the right to one, or he would never have made a deed with covenants to her. He was confirmed in this belief by a paper from Burt,

dated within the month preceding this deed, upon which he probably acted, and which is as follows:

"GEORGIA, COLUMBIA COUNTY.

I, Moody Burt, of the State and county above written, do certify that on or about January, 1859, I deeded or gave a certain tract of land on Lookout Mountain, in the State of Tennessee. Said lot of land contained six acres, more or less. The above lot of land I purchased of Geo. D. Foster, in 1852. The above named lot of land I, as above stated, gave unto Sallie A. Avery, eldest daughter of Dr. James C. Avery, of DeKalb county, Georgia, who has since intermarried Wm. H. Howard, of Richmond county, Georgia.

This March 17, 1873.                    MOODY BURT.

JAMES M. LUKE, Acting J. P.

Witness: A. J. AVERY,
B. R. REED.

This paper was objected to as evidence by defendants because incompetent and irrelevant. Being duly proven it was competent; and being the declaration admission of the person in whom was the alleged outstanding title in regard to the very land in controversy, as we have no doubt, it was relevant and admissible. The question in the case is, what is the effect of this paper and the deed aforesaid? There is no direct evidence to support the statements of the papers that Foster had conveyed to Burt and Burt to complainant. The only witness in regard to such supposed papers is the mother of complainant, and she never saw either of them. What, then, is the legal consequence of the admitted conveyance by Foster to Burt; the admission by Burt that he had given or deeded the land to complainant, and the conveyance therefore by Foster to her of the title?

Defendants insist that the title is outstanding in Burt, complainant, that equitably, if not legally, it is

vested in her, and therefore she can recover in this suit.    Here lies the kernel of the controversy.

From the record it is apparent that the title is either in Foster, Burt or complainant.    Complainant in her bill as well as by claiming under the deed of 1873, admits that Foster's title has been conveyed to Burt; she alleges that Burt had conveyed it to her, no deed from him to her is shown ever to have been in existence.    This leaves the legal title in Burt. But he could not maintain ejectment against defendants, for he has no available proof of his title against them; and, moreover, he admits that the title had passed from him before Graham bought of Massengale.    Foster could not maintain ejectment against them, because he had conveyed to two different persons before their purchase.    Is complainant also to fail hecause the strict legal title appears to be in Burt?

The defense of outstanding title is not favored in our courts, nor generally in America.    To defeat an action of ejectment at law even, the outstanding title must be a present, subsisting, operative and available title, not one reverted, barred or abandoned:  *Peck* v. *Carmichael,* 9 Yer., 325;  *Dickinson* v. *Collins,* 1 Swan, 516;  *Self* v. *Haun,* manuscript opinion, Knoxville, 187—;  *Salter* v. *Williams,* 10 Ga., 186;  *Jackson* v. *Hudson,* 3 Johns., 375;  *Foster* v. *Joice,* 3 Wash. C. C. Rep., 498.

Such a defense. should receive still less favor in equity than at law; and where it appears that the probable holder of the legal title cannot, for lack of competent proof or other sufficient obstacle recover in

ejectment, equity will be slow to deny relief to the equitable owner.

Accordingly it has been ruled in many reported cases, and with good reason, that where a vendee under an unregistered deed has, without reconveying title, surrendered, cancelled or destroyed his deed, and consented that his vendor might convey the title to another person, and the same has therefore been done, such second vendee will thus obtain a good title, though in strictness the title had passed out of the vendor by the first conveyance and had never returned to him. For in such case, the deed to the second vendee being registered, the title would *prima facie* be in him; and this title the vendor would be estopped from denying by the deed itself, and the first vendee by his act in surrendering or cancelling his deed that the vendor might convey to another: *Commonwealth* v. *Dudley*, 10 Mass., 403; *Holbrook* v. *Terrell*, 9 Pick, 105; *Faulks* v. *Burns*, 2 N. J. Eq., 250; *Lawrence* v. *Stratton*, 6 Cush., 163; *et vide Trull* v. *Skinner*, 17 Pick, 213; 3 Washb. R. P., B. 3, ch. 4, sec. 2.

True, there is lacking in this case the surrender or cancellation of the first deed for the purpose of enabling the vendor to make conveyance to another person. But in lieu thereof is a written statement by the first vendee that he had deeded or given the land to another; and to that person the vendor therefore makes the second conveyance. The deeds of Foster to Burt, and of Burt to complainant, if they ever were executed are unrecorded and probably lost. If

they never were executed, then the recital thereof in Foster's deed to complainant is incorrect; and the title being in Foster in 1873 was conveyed to complainant. If the recitals are correct, then the title was already in complainant. But if Foster had made deed to Burt, but he had not made one to complainant, what is then the effect? Burt has given complainant the written statement, witnessed and acknowledged that he had deeded or given her the land; she exhibits that to Foster, who thereupon makes her the second deed. The loss of the deeds and the written statement of Burt for the benefit of complainant are the equivalent of a surrender or cancellation of Burt's deed. He certainly had abandoned his title or relinquished it in complainant's favor, and thus authorized Foster to make a muniment of title to complainant, as effectually as he could have done by surrender of his deed and direct request.

Obviously there is here no present, subsisting, operative and availiable title in Burt, not barred or abandoned, such as is required to defeat an action of ejectment. Whatever he has of title, legal or equitable, he is equitably estopped from setting up against Foster or complainant; and she is entitled to recover the land from the defendants, who have neither title nor possessory rights.

Respondents rely in their answers upon the plea of innocent purchasers, and ask allowance for betterments, placed upon the land by them respectively. Graham, from whom the present holders purchased, did not buy of Massengale until 1877, four years after complainant's deed from Foster was made and registered. He de-

poses, however, to his own good faith in the purchase, and to various circumstances, which corroborate his statement, and denies any knowledge of complainants title until about the time suit was brought. The sub-purchasers bought relying upon his title, and none appear to have had knowledge of complainant's title until suit was brought; but all bought and made their improvements in good faith. These improvements are worth many times the value of the land. Complainant ought not in equity to have the benefit of these expenditures for nought.

Had she relied upon her suit at law and recovered the land therein, it is probable respondents could only have recovered betterments, equal to rents, as provided by our statute: Code, secs. 3259–61.

But, fearing the infirmity of her title at law, she has appealed to equity to aid her in recovering the land. Having sought and obtained equity, she must now do equity. The claim of respondents for betterments is not defeated by the fact that complainant had a registered title. Constructive notice by registration of adverse title does not destroy this equity: Malone on Real Property Trials, 140 (note). They used ordinary prudence and precaution in their purchases; and, having improved the land under color of title, they are entitled to receive something for all betterments placed on the land before they had actual knowledge of complainant's title: 2 Pomeroy's Eq. Jur., sec. 1241. But to what extent? Full value? Or only the value of rents and profits? And how is the allowance for them to be measured, declared and enforced?

Howard *v.* Massengale.

Previous to *Fisher* v. *Edington,* 12 Lea, 189, it had been the practice, and was by the bar generally thought to be the rule, to limit the allowance for betterments to the sum total of rents and profits. The reasons for this, and the danger to the title-holder from a different practice, are cogently expressed in the opinion of Judge Turney in that case. The equity of the occupants, however, was considered by a majority of the court to be so strong as to overcome these objections, and the full value of their betterments was decreed to them regardless of the limit of rents and profits. Here the case of the occupant defendants is equally meritorious. Lots ranging in value from forty to two hundred dollars, when vacant, and of no appreciable rental value, have, by these improvements, been increased in value until they are now probably worth from four hundred to three thousand dollars, and perhaps more. All of these improvements have been made in the past five years, and without knowledge of complainant's title; some of the most valuable of them are yet incomplete, their progress having been arrested by this suit. The builders and occupants have as yet received little or nothing from their outlay. To limit their allowance for betterments, by the amount of rents and profits, is practically a total denial of the very equity of their claim, *i. e.,* that complainant shall not take from them, without compensation, things of value, placed by them in good faith on her land, which now, because they are fixtures, necessarily inure to her benefit.

As in *Fisher* v *Edington,* so here the court is of

opinion that defendants should have the full value of their betterments. But to avoid the danger, so likely to result in any similar case, from an overestimate of their value, and a possible sacrifice at forced sale, at which the entire proceeds of sale might prove insufficient to satisfy the value of betterments, as they may have been estimated and decreed, whereby the title-holder would thus be *bettered* out of her entire estate, the report, to be made on this subject, should include a statement of the proportional value of the lot and improvements at date of surrender or of making the report, and complainant on the entering of the decree fixing these values should be allowed to elect as to each lot whether she will pay the decreed value of the betterments and taxes less rents to the respondents severally, and thus discharge their respective liens, or take her proportional part, according to the relative value of each lot and · betterments thereon, of the entire proceeds of a sale of the same.

In case she should choose the latter method, then the value of rents less taxes paid by respondents respectively, will be deducted from the improvers shares and added to complainant's share of the proceeds.

The result is, that the decree of the chancellor is reversed, and the report of Referees set aside. The cause will be remanded for an account of rents, betterments and taxes, and for further proceedings according to this opinion. The entire costs of the cause will be paid one-half by complainant and one-half by the· respondents.