BLEDSOE COUNTY,
Tennessee, Appellant,

v.

Eleanor Bruce McREYNOLDS, Executrix; the Navarre Investment Company;
and Cane Company, Ltd., Appellees.

Supreme Court of Tennessee,
at Knoxville.

Nov. 18, 1985.

Rehearing Denied Jan. 13, 1986.

J. Curtis Smith, Greer, Smith & Condra,
Dunlap, for appellant.

W. Alan Nichols, Miller & Martin, Chattanooga, David R. Swafford, Pikeville, for
appellees.

OPINION

FONES, Justice.

We granted Bledsoe County's Rule eleven application to decide the controlling issue in this case, to-wit: whether property owners who improve a public road in the mistaken belief that it was a private road, are entitled to be reimbursed by the governmental entity responsible for maintenance of the road.

This suit was brought to require defendants to reopen Meadow Creek Road to public use. Defendants own land adjacent to Meadow Creek Road and responded by denying that it was a public road and asserting that if it was a public road, it had been abandoned. Alternatively, if it was adjudged to be a public road, defendants asserted a counterclaim seeking reimbursement from the county for the cost of the improvements made, relying upon legal theories of estoppel and unjust enrichment.

Both courts below have adjudged Bledsoe County liable for $147,840 for the improvement of 2.8 miles of the Meadow Creek Road lying within the boundaries of the county, predicated upon different theories of liability. The trial judge's rationale for imposing liability was not explicitly articulated, but defendants insist that he applied the doctrine of estoppel. The Court of Appeals relied upon cases between private parties wherein equitable relief was provided to the party who made improvements on land under the good faith belief of ownership of the land, citing *Howard v. Massengale*, 81 Tenn. 577, 13 Lea 577

(1884) and *Sequatchie Coal Co. v. Sunshine C & C Co.*, 25 Tenn.App. 604, 166 S.W.2d 402 (1942). In our opinion, neither theory can be used to impose liability on the county.

I.

Witnesses traced the history of the road that became known as Meadow Creek Road back to the turn of the century. It was a portion of a road that ran from Lee Station in Bledsoe County to Spencer in Van Buren County. There was considerable evidence of the regular use of this road by the public until after World War II. There was evidence that use of Meadow Creek Road diminished in the years 1945 to 1970; that in the 1950's and 1960's it was used mostly by hunters and that it was not maintained by the county during that period; that one of the defendants had a cable stretched across the road several times in the 1960's to prevent use, but that it was repeatedly removed by parties unknown. However, both courts below have found that it was a public road and that it was not abandoned. We have carefully reviewed the record and find ample material evidence to support those findings and must therefore affirm them. T.C.A. § 27–1–113.

In 1970, defendants began improving Meadow Creek Road, built a dam across Meadow Creek and relocated a part of the old road bed. The improvements were completed in 1973 and the public was permitted to use and did use the road until 1981. Acts of vandalism and threats of violence caused adjoining property owners to band together and close the Meadow Creek Road to public use, which precipitated this law suit. It was undisputed that defendants, the Navarre Company in particular, paid for the improvements made to the Meadow Creek Road in Bledsoe and Van Buren Counties in the early seventies and that the work was done without consultation with or permission from the Bledsoe County Commission.

II.

■ The rule in this State is that the doctrine of estoppel generally does not ap-ply to the acts of public officials or public agencies. *See* e.g. *State ex rel. Moulton v. Williams*, 207 Tenn. 695, 343 S.W.2d 857 (1961); *State ex rel. Dossett v. Obion County*, 188 Tenn. 538, 221 S.W.2d 705 (1949). That is the rule in the majority of jurisdictions. Public agencies are not subject to equitable estoppel or estoppel in pais to the same extent as private parties and very exceptional circumstances are required to invoke the doctrine against the State and its governmental subdivisions. *See* 31 C.J.S. Estoppel § 140 pp. 691–692.

Defendants cite a number of Tennessee cases wherein there was discussion of the issue of whether estoppel could be invoked against public authorities, in support of defendant's assertion that Tennessee "has consistently applied estoppel and laches against public bodies when warranted by the facts in the case."

The earliest of the cases cited is *Dennis v. Rainey*, 67 Tenn. 501, 18 Baxter 501 (1875) described by defendants as a case wherein "the Supreme Court stated without having to decide that estoppel may be applied against a public body in a proper case." *Dennis* was a forcible entry and detainer suit wherein extraneous issues were raised in the trial court. The Supreme Court held that the trial judge had erroneously excluded from evidence a deed from the City of Pulaski to Rainey, and remanded for a new trial, expressing the hope that the other errors would "not occur upon another investigation." The discussion of the application of estoppel against a municipal corporation was dicta but as dicta it merely quoted an unnamed text writer to the effect that there may be exceptions to the general rule that the public right in public streets and places cannot be defeated by laches or estoppel. In our opinion, *Dennis* cannot be seriously asserted as authority for any legal proposition.

Defendants say that *Gas-light Co. v. Memphis*, 93 Tenn. 612, 30 S.W. 25 (1894) holds that the city was estopped to deny the existence of an implied contract and allowed a private party to recover on a quantum meruit basis. The doctrine of estoppel was not mentioned at any point in

the entire opinion. In 1879 and 1880 there were formal written contracts between the gas company and the City of Memphis that satisfied the requirements of the city charter. The gas company continued to provide the same service for several subsequent years and in the litigation the city denied liability because of the lack of a formal contract. The court held that the gas company was entitled to recover upon the theory of implied contract. It is true that the factual situation in *Gas-light* is typical of the few exceptional situations in which the courts, searching for an equitable doctrine to do justice, sometimes label it estoppel, but the *Gas-light* court did not.

A somewhat similar fact pattern was present in *Trull v. City of Lobelville,* 554 S.W.2d 638 (Tenn.App.1976). Plaintiff contracted with the City of Lobelville to install sewer, gas and water lines at various specified places, to recover his cost by charging property owners tap-on fees and when his installation cost plus a reasonable profit was recovered, plaintiff agreed to convey the lines to the city. In the meantime, the city would get the revenue for the gas and water used by the property owners. Apparently after a change in city officials and after plaintiff had performed the work and made the installations, but before he had recovered his cost, the city refused to honor the contract on the ground that it had not been formalized in accord with the requirements of the law for the municipality of Lobelville. The Court of Appeals cited the following from 56 Am.Jur.2d Municipal Corporations § 527, p. 582–83:

> "One of the commonest situations in which the doctrine of estoppel may be applied against a municipal corporation or other political subdivision with regard to the validity of its contracts is that in which the contract is intra vires and not prohibited by law, but where the contracting power of the corporation or subdivision has been irregularly or improperly exercised." *Id.* at 642.

The Court of Appeals observed that "the circumstances of the present case estop the city from defending upon the grounds of its own dereliction." However, recovery against the city was allowed under the doctrine of implied contracts. It would have been appropriate to apply estoppel in pais to the city in *Trull* because, beyond question, the city induced plaintiff to perform and should not be permitted to take advantage of its own failure to comply with the formalities required by law. As in *Gas-light* that was an exceptional situation that warrants invocation of the doctrine of estoppel against a public body.

*State ex rel Ammons v. City of Knoxville,* 33 Tenn.App. 622, 232 S.W.2d 564 (1950) was another extraordinary case where the city, through its city manager, was found to have forced the resignation of two policemen by duress. Later, the city relented and directed the procedure by which they were to be reinstated which involved a supposedly friendly court action. All went well in the trial court, but before that decree of reinstatement became final, the city appealed. The Court of Appeals reversed the reinstatement on the grounds that no wrong was charged against the city in connection with the resignations and that the resignations were voluntary. In the subsequent case by the policemen charging duress, the city's defense of res judicata was rejected. The court found that the city had affirmatively induced plaintiffs not to charge threats and coercion in the first suit while assuring them of reinstatement and quite properly held the city estopped to rely on res judicata.

Defendants also cite *Putnam County v. Smith County,* 129 Tenn. 394, 164 S.W. 1147 (1913), and *Board of Education of Memphis v. Shelby County,* 207 Tenn. 330, 339 S.W.2d 569 (1960).

The application of estoppel in litigation between two public bodies has no precedential value whatsoever and a discussion of those cases would serve no purpose.

It is significant to observe that in those Tennessee cases where estoppel was applied, or could have been applied, the public body took affirmative action that clearly induced a private party to act to his or her detriment, as distinguished from silence, non-action or acquiescence. In the instant case defendants have nothing upon which to predicate the essential element of inducement, except silence and inaction.

It is appropriate to observe, at this juncture, that it is undisputed that defendants kept the Meadow Creek Road open to the public for approximately eight years after they completed the improvements in controversy here. Without applying estoppel or any other label, it is clear that factually, defendants' conduct in treating the Meadow Creek Road as a public road for that period of time is inconsistent with an assertion that they should have been informed by the county that the road was a public road and is inconsistent with their claim for reimbursement which was first asserted eight years after the expenditures were made to improve the public road.

■ The cases relied upon by the Court of Appeals in imposing liability upon Bledsoe County espousing the equitable principle that a party may recover for "betterments" placed upon land in the good faith belief of ownership, from the true owner thereof, were between private parties. No authority has been cited wherein that principle was applied to impose liability upon public bodies for the improvement of public roads or other public property by a private party under the mistaken belief of ownership, and we are of the opinion that it would be contrary to the public policy of Tennessee to do so.

■ The courts have no authority to impose a duty upon public agencies to patrol roadways and monitor public property to see that private parties do not mistakenly improve public lands or facilities, nor can the courts sanction a doctrine that allows private parties to determine the nature, extent and cost of public works and public improvements. No authority has been cited nor have we found any that sanctions subjecting the public's property and rights to such hazards and obligations.

Also negating recovery by defendants in this case is the holding of *Holtzclaw v. Hamilton County*, 101 Tenn. 338, 47 S.W. 421 (1898) that "the court must repel any claimant who fails to show a valid contract with the county.... If there is no authority to hold the county for any particular item of cost or expense, the courts must arrest any proceeding for that purpose even if prosecuted by consent." 101 Tenn. at 340–41, 47 S.W. 421. The quoted principle has been affirmed in numerous Tennessee cases, including *Reed v. Rhea County*, 189 Tenn. 247, 225 S.W.2d 49 (1949) and *Lawrence County v. White*, 200 Tenn. 1, 288 S.W.2d 735 (1956). In *White*, Mr. Justice Burnett added the following rationale to the principle of *Holtzclaw:* "Obviously if there were unfaithful or negligent public officials they might obligate the County for untold items and absolutely wreck the County." 200 Tenn. at 10, 288 S.W.2d 735.

■ The judgments of the courts below imposing liability upon Bledsoe County for improvements made by defendants are reversed. The adjudication that the Meadow Creek Road as improved by defendants is a public road and that it has not been abandoned is affirmed. This cause is remanded to the Chancery Court of Bledsoe County for any necessary further proceedings in this cause and the enforcement of the decree of this Court. Costs are adjudged against defendants.

COOPER, C.J., and BROCK, HARBISON and DROWOTA, JJ., concur.

## OPINION ON PETITION TO REHEAR

A petition to rehear has been filed by appellees, Eleanor Bruce McReynolds, Executrix, the Navarre Investment Company and Cane Company Limited, considered by the Court, found to be without merit, and is respectfully denied.