# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 28, 2006 Session

## WILLIS BRUCE AMOS, et al., v. THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE

**Appeal from the Chancery Court of Davidson County**
**No. 02-2622-I     Claudia C. Bonnyman, Judge**

_____

**No. M2005-00932-COA-R3-CV - Filed on August 2, 2007**

_____

This appeal involves a declaratory judgment on the issue of whether pursuant to the Metro Code, the Metropolitan Government of Nashville and Davidson County, Tennessee, should have included lump-sum payments for accrued vacation time in the calculation of pension benefits for retired employees, or in the alternative, whether the Metropolitan Government of Nashville and Davidson County, Tennessee should be estopped from excluding lump-sum payments for accrued vacation time from the calculation of pension benefits for retired employees.  On appeal, the Appellants claim that the trial court erred in finding that: 1) pursuant to the Metro Code, lump-sum payments should be excluded from the calculation of pension benefits for retired employees, 2) the Metropolitan Government of Nashville and Davidson County, Tennessee is not estopped from excluding the lump-sum payments from the calculations, and 3) denying certification of this matter as a class action.  Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JERRY SCOTT, SR. J., delivered the opinion of the court, in which WILLIAM BRYAN CAIN, J., joined and FRANK G. CLEMENT, JR., J., dissented.

C. Dewey Branstetter, Jr., Mark A. Mayhew, and David L. Raybin, Nashville, Tennessee, for the appellants, Willis Bruce Amos, et al.

Karl F. Dean, James L. Charles, Laura Kidwell, and Matthew J. Sweeney, Nashville, Tennessee, for the appellee, the Metropolitan Government of Nashville and Davidson County, Tennessee.

# OPINION

## I. Facts

The Appellants are former employees of the police and fire departments of the Metropolitan Government of Nashville and Davidson County, Tennessee, the Appellee, who retired after September 13, 2001. All of the Appellants worked for over 25 years for the Appellee, and one of the Appellants worked as long as 40 years for the Appellee.

From 1988 to September 2001, lump-sum payments for accrued vacation time were made to employees of the Appellee prior to their retirement date, which resulted in an increase in pension benefits due to the inclusion of the lump-sum payments in the calculation for pension benefits. In October 2000, Tony Driver, a Metro Benefit Board representative, conducted a retirement seminar for the Appellee's employees that were contemplating retirement. At the seminar, he represented to the prospective retirees that the lump-sum payment for accrued vacation time would be included in the calculation of their pension benefits.

In September 2001, the attorneys in the Metro Department of Law opined that payment for unused vacation time in a lump-sum before an employee's termination should not occur. A month later, the Director of Finance instructed department heads that lump-sum payments for accrued vacation time should not be paid until the final paycheck was issued. As a result, the lump-sum payments were made after the retirement date and were not included in the calculation of pension benefits. All of the Appellants retired after the date of the directive by the Director of Finance, and the lump-sum payments that they received for accrued vacation time were not included in the calculation of their pension benefits. The Appellants claim that the Appellee should have included the lump-sum payments for accrued vacation time in the calculation of their pension benefits, or in the alternative, that the Appellee should be estopped from excluding the lump-sum payments for accrued vacation time in the calculation of their pension benefits. The trial court found that pursuant to the Metro Code, lump-sum payments should be excluded from the calculation of pension benefits for retired employees, the Metropolitan Government of Nashville and Davidson County, Tennessee is not estopped from excluding the lump-sum payments from the calculations, and that the matter is not the proper case for certification as a class action.

## II. Standard of Review

"Summary judgments enable courts to conclude cases that can and should be resolved on dispositive legal issues." *Church v. Perales,* 39 S.W.3d 149, 156 (Tenn.Ct.App.2000). Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Byrd v. Hall,* 847 S.W.2d 208, 214 (Tenn.1993). Appellate review of a trial court's grant

of summary judgment presents a question of law, which the appellate courts review de novo affording no presumption of correctness to the trial court's decision. *Mooney v. Sneed,* 30 S.W.3d 304, 306 (Tenn.2000). The evidence must be viewed in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *Edwards v. Hallsdale-Powell Utility Dist.*, 115 S.W.3d 461, 464 (Tenn. 2003).

## III. Issues on Appeal

There are two dispositive issues on appeal as follows:

A. Whether the trial court erred by finding that pursuant to the Metro Code, lump-sum payments for accrued vacation time should be excluded from the calculation of the Appellants' pension benefits.

B. Whether the trial court erred by finding that the Appellee is not estopped from excluding lump-sum payments for accrued vacation time from the calculation of the Appellants' pension benefits.

## IV. Analysis

**A. Whether the trial court erred by finding that pursuant to the Metro Code, lump-sum payments for accrued vacation time should be excluded from the calculation of the Appellants' pension benefits.**

Appellants' pensions were calculated pursuant to Chapter 3.37 of the Metropolitan Code based upon their "average earnings." Under Metropolitan Code § 3.08.010(1), "average earnings" is defined as the "arithmetic monthly average of a metropolitan employee's earnings during the period which contains the sixty consecutive months of credited service which produces the highest average." "Earnings" is then defined under Metropolitan Code § 3.08.010(3), in pertinent part, as "the total cash compensation paid by the metropolitan government . . . to a metropolitan employee for his personal services . . . ." Therefore, "average earnings" is the "arithmetic monthly average of [the total cash compensation paid by the metropolitan government . . . to a metropolitan employee for his personal services . . .] during the period which contains the sixty consecutive months of credited service which produces the highest average."

For the Appellants to prevail, they must prove that the lump-sum payments for accrued vacation time are "earnings" as defined in Metropolitan Code § 3.08.010(3), which defines earnings as the "total cash compensation paid by the metropolitan government . . . to a metropolitan employee for his personal services . . . ." A lump-sum payment for accrued vacation time is cash compensation; however, the issue is whether the lump-sum payment is for "personal services."

3

As compensation for their personal services, the Appellants received a salary, vacation time, insurance and other benefits. Article 8.210 of the Charter of the Metropolitan Government states that:

> Every member of the [Police] department shall be entitled to two (2) days off each week and to an annual vacation of twenty (20) days without deduction of pay. The time for vacations shall be determined and assigned by the chief of police. All members of the department shall be subject to call and assignment to duty at any time during an emergency.

Article 8.308 uses the same language except it applies to the fire department. Therefore, for both police and fire department employees, vacation time is the right to take time off without deduction of pay and is earned by providing personal services. If an employee uses vacation time for a day off, the employee receives cash compensation for that day, as if the employee had worked. When an employee retires, the employee may elect to either receive a lump-sum cash payment for their accrued vacation time or elect to remain on the payroll and exercise his or her right to take time off without deduction of pay.

Vacation pay is a form of compensation for services rendered, and when the services are rendered, the right to secure the promised compensation is a vested right. *Whaler v. Melville Corp.*, No. 84-287-II, 1985 Tenn. App. LEXIS 2787, at *8 (Tenn. Ct. App. April 3, 1985). In this case, accrued vacation time is a vested right to take time off without deduction of pay that is earned by performing personal services. However, accrued vacation time is not the right to receive a lump-sum payment upon retirement. The lump-sum payment is made in lieu of the retiring employee using his/her accrued vacation time. Stated differently, the Appellants are receiving the lump-sum payment for their accrued vacation time, not for performing personal services. In essence, the Appellants are selling their accrued vacation time back to their employer instead of exercising their right to take time off without deduction of pay. Therefore, we hold that lump-sum payments for accrued vacation time are not "earnings" as defined in Metropolitan Code § 3.08.010(3) because the lump-sum payments are not for "personal services". Hence, if the lump-sum payments for accrued vacation time are not "earnings" as defined in Metropolitan Code § 3.08.010(3), then they are not includable in the calculation of pension benefits as "average earnings" pursuant to Chapter 3.37 of the Metropolitan Code. Furthermore, because the lump-sum payment is not includable as "average earnings," the timing of the lump-sum payment, whether it was made prior to or after retirement, does not affect this Court's decision.

**B. Whether the trial court erred by finding that the Appellee is not estopped from excluding lump-sum payments for accrued vacation time from the calculation of the Appellants' pension benefits.**

The elements of equitable estoppel are: (1) acts, statements, or failures to act made by a party that mislead the moving party, (2) the moving party lacks knowledge of the facts and is entitled in good faith to rely on the party's acts, statements or failures to act, (3) a change in position by the moving party in reliance on the party's acts, statements or failures to act, and (4) the resulting change in position is to the moving party's detriment. *Roach v. Renfro,* 989 S.W.2d 335, 339 (Tenn.Ct.App.1998); *Sexton v. Sevier County,* 948 S.W.2d 747, 751 (Tenn.Ct.App.1997). Also, when equitable estoppel is applied to a public agency, "[t]he rule in this State is that the doctrine of estoppel generally does not apply to the acts of public officials or public agencies." *Bledsoe County v. McReynolds*, 703 S.W.2d 123, 124 (Tenn. 1985). "Public agencies are not subject to equitable estoppel or estoppel in pias to the same extent as private parties and <u>very exceptional circumstances</u> are required to invoke the doctrine against the State and its governmental subdivisions." *Id.* (emphasis added). Therefore, for equitable estoppel to apply in this case, the Appellants must prove that the Appellee's agents acted, made statements, or failed to act upon which the Appellants reasonably relied, and as a result of their reliance, changed their positions to their detriment. Furthermore, because the Appellants are moving to estop a public agency, they must also prove that "very exceptional circumstances" exist for the doctrine to apply to the Appellee.

First, the Appellants must prove that agents of the Appellee made statements, committed acts, or failed to act, which misled the Appellant. For over ten years, the Appellee made lump-sum payments for accrued vacation time prior to termination of employment and included the lump-sum payments in the calculation of pension benefits. Also, at a seminar conducted by a representative from the Metro Benefit Board, projections of monthly pension benefits for retiring officers included lump-sum payments for accrued vacation time. Then, in 2001, the Appellee stopped making lump-sum payments for accrued vacation time prior to termination of employment so that the payments would not be included in the calculation of pension benefits. Based on the foregoing, the Appellee made statements and committed acts that misled the Appellants.

Second, the Appellants must prove that they lacked knowledge of the facts and are entitled in good faith to rely on the Appellee's acts, statements or failures to act. The only interpretation of the Metro Code regarding the inclusion of lump-sum payments for vacation pay in the calculation of pension benefits that the Appellants received was from the Appellee's agents. The Appellee included vacation pay in the calculation for pension benefits for over ten years and at a seminar conducted by a representative from the Metro Benefit Board, projections of monthly pension benefits included the lump-sum payments. Therefore, the Appellants lacked knowledge of the facts. Furthermore, based on the projections at the seminar and the length of time that the Appellee included the lump-sum payments in the calculation of pension benefits, the Appellants were entitled to rely on the Appellee's agents' acts and statements.

Third, the Appellants must prove that they changed their positions in reliance on the acts and statements of the Appellee. Arguably, the Appellants may have retired at

different times than they otherwise would have in the belief that their pension benefits would be higher in reliance on the Appellee's statements and prior actions of including the lump-sum payments for accrued vacation time into the calculation of pension benefits. The Appellants began retiring on or about December 31, 2001, three months after the Metropolitan Government Department of Law issued its opinion on September 13, 2001 stating that lump-sum payments for accrued vacation time would not be included in the calculation for pension benefits. On October 31, 2001, prior to their retirement, the Director of Finance and the Human Resources Director for the Appellee notified department heads that lump-sum payments for accrued vacation time would be made after retirement, and therefore, would not be included in the calculation for pension benefits. Presumably, the Appellants knew that the lump-sum payments would no longer be included in the calculation and could have chosen not to change their positions by retiring when they did.

Fourth, assuming that the Appellants changed their positions based on the acts and statements of the Appellee by retiring, the Appellants must prove that their changes of their positions were to their detriment. If the Appellants are claiming that the lower pension benefits are to their detriment, then equitable estoppel does not apply to this case because a person not entitled to receive a benefit, does not suffer a detriment by failing to receive it. As stated in the previous section, the Metro Code did not give the Appellants the right to have lump-sum payments for accrued vacation time included in the calculation of their pension benefits. The Appellee mistakenly included the lump-sum payments in the calculation of pension benefits in contradiction of the code, but the earlier recipients never had the right to receive the benefit. Therefore, the Appellants did not change their positions *to their detriment* unless they passed up opportunities or suffered some other economic losses besides lower pension benefits. For example, if the Appellants had a right to the pension benefits and then gave that right up in reliance on the Appellee's actions, then equitable estoppel may apply. Also, if the Appellants had chosen to work for the Appellee instead of taking another employment opportunity based on the belief that they would receive higher pension benefits, then equitable estoppel may apply. However, the record contains no evidence that the Appellants passed up any opportunities or suffered any other economic losses. Hence, equitable estoppel does not apply to this case because the Appellants did not rely on the Appellee's actions *to their detriment*.

Finally, even assuming that all four elements of equitable estoppel are met, the Appellants must prove that "very exceptional circumstances" exist for the doctrine of equitable estoppel to apply to the Appellee, a public agency. Determining whether "very exceptional circumstances" exist is a fact intensive inquiry and is obviously different in every case. In this case, the Appellants failed to receive a benefit, to which they had no legal right. Furthermore, as stated above, the record contains no evidence that the Appellants changed their positions to their detriment in reliance on the Appellee's agents' statements, acts, or failures to act. Very exceptional circumstances were not

6

shown to exist in this case and the doctrine of equitable estoppel does not apply to the Appellee.

## V. Conclusion

In conclusion, we hold that the trial court did not err by finding that lump-sum payments for accrued vacation time should be excluded from the calculation of the Appellants' pension benefits. Furthermore, the trial court did not err by finding that the Appellee is not estopped from excluding lump-sum payments for accrued vacation time from the calculation of the Appellants' pension benefits. Having affirmed the trial court and found against the Appellants' positions on the first two issues, the remaining issue raised by the Appellants, whether the trial court erred by not certifying the case as a class action, is moot.

Therefore, the judgment of the trial court is affirmed with costs of appeal assessed against appellants and their surety.

_____
Jerry Scott, Senior Judge