IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 14, 2008 Session

OAKWELL FARMS LIMITED PARTNERSHIP ET AL. v.
METROPOLITAN BOARD OF FIRE & BUILDING CODE APPEALS ET
AL.

Appeal from the Chancery Court for Davidson County
No. 05-1739-I    Walter C. Kurtz, Judge

No. M2007-00801-COA-R3-CV - Filed November 14, 2008

An apartment complex owner filed a petition for writ of certiorari to challenge a decision of the
Metro Board of Fire and Building Code Appeals denying the owner's appeal of the fire marshal's
citation of the apartment complex for failure to install pull station alarms in certain areas. We agree
with the chancellor's conclusion that the Board did not exceed its jurisdiction, did not act illegally
or arbitrarily, and based its decision upon material evidence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and
RICHARD H. DINKINS, JJ., joined.

William L. Harbison, Samuel P. Funk, and Lisa K. Helton, Nashville, Tennessee, for the appellant,
Burning Tree TN, L.P.

James W.J. Farrar and Francis H. Young, Nashville, Tennessee, for the appellees, Metropolitan
Board of Fire & Building Code Appeals and the Metropolitan Government of Nashville & Davidson
County.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Burning Tree TN, L.P., the appellant, owns Burning Tree Apartments in Nashville.[1]  The
Burning Tree complex was constructed in or about 1978 and consists of 26 groupings of apartment

---

[1]Similar cases brought by other apartment complex owners were consolidated below, and the parties agreed
to allow the Burning Tree case to proceed first as a test case and to put the other claims on hold pending the outcome
of Burning Tree's case.

units in various configurations. The eight groupings at issue in this case all contain a covered breezeway between some of the individual apartment units. Five of the groupings have the following layout: five units–breezeway–ten units–breezeway–five units. The remaining three groupings have the following layout: five units–breezeway–ten units–breezeway–ten units–breezeway–five units. Each breezeway contains two staircases leading up to common landing areas providing access to the units on either side of the breezeway.

The parties agree that, at the time when Burning Tree was built, the Metropolitan Government of Nashville & Davidson County ("Metro") had adopted a version of the National Fire Protection Association's Fire Prevention Code ("NFPA Code") that included a provision substantially similar to the provision at issue in this case.[2] Pursuant to section 10.64.010 of the Metropolitan Code of Laws, as amended in 2002, Metro adopted the 2000 Edition of the NFPA Code. Section 31.3.4.1 of the 2000 NFPA Code provides, in pertinent part:

> Apartment buildings with more than three stories or with more than 11 dwelling units shall be provided with a fire alarm system in accordance with Section 9.6[.]

Section 9.6 of the 2000 NFPA Code requires pull station fire alarms. A pull station alarm is a device that can be manually activated to alert others of a fire. Such an alarm does not detect smoke and does not alert the fire department. Once a smoke detector in an apartment has alerted its occupants, someone can pull the pull station alarm to alert nearby residents.

From the time of its original approval for construction until 2004, Burning Tree was never cited for failing to install pull station alarms in the eight buildings at issue. On June 22, 2004, a Metro inspector conducted a regular review of the property and cited Burning Tree for violation of section 31.3.4.1. Burning Tree appealed this decision to the Metro Board of Fire & Building Code Appeals ("the Board") and a hearing was held on August 9, 2005.

At the hearing, Jimmy Webb, a representative of Burning Tree, asserted that the fire marshal's interpretation of section 31.3.4.1 was unreasonable and unfair:

> It's just not reasonable. It's not fair, and it's especially not fair in light of the fact that we have been approved for years. We went through the process that is required in order to – when the properties were built . . . where they were approved, where they met, were inspected, where their plans were inspected, where they met the codes, were told they met the codes[.]

Mr. Webb testified that, for the seven apartment complexes in which he had an interest, including Burning Tree, the estimated cost of retrofitting all of the affected buildings with pull station alarms was $750,000 to one million dollars.

---

[2]The predecessor provision differed in that the number of dwelling units that triggered the pull station alarm requirement was twelve rather than eleven.

Tony Wallace, Assistant Fire Marshal, testified that, "[r]egardless of whether you have breezeways or not, if you have more than 11 units under roof, that's what constitutes [a building under] this code."

Metro also introduced the testimony of Dr. James Munger, a fire protection consultant, over the objection of Burning Tree. He stated that the NFPA Code was intended to be used in conjunction with the applicable building code. Dr. Munger testified:

> So if you look at what's defined as a building, it's what is the area inside exterior walls. Then we get into separation by a fire wall, so that breezeway makes this all one building. So if you have units on either side of the breezeway under the codes, that's considered one building unless there is a fire wall there[.]"

He emphasized the importance of having manual fire alarms to expeditiously alert those in nearby apartment units of a fire.

The Board's chairman made the following observation: "I think this board has been very consistent in the ones we've heard – and we've heard quite a few – that if a building was more than three stories and [sic] did have more than 11 units, breezeway or no breezeway, we have been consistent on the pull stations." Building Tree's attorney responded that they were asking the Board to reconsider the issue of units connected by a breezeway. Fire Marshal Danny Hunt stated that "[w]e are considering any building under a roof, a connected roof" to be a single building. Another board member asked Mr. Hunt to comment on the apparent lack of enforcement of the pull station alarm requirement in the past. In response, Mr. Hunt testified:

> I have also been in the fire protection business for going on 30 years, and in this city; so I know the details of what's been going on. Back in 1976, '78, as far as back as I can remember on that, there were fire alarm systems required in apartment buildings. The fire marshal didn't require them because what was happening at that time is we were having tons of nuisance calls. But since 9-11 has come around this country has had a different respect toward fire emergencies, and they take fire a little more serious now because of the terrorist threats and the twin towers and everything; so we don't have the problems with nuisance alarms we did have years and years ago.

The Board unanimously voted to deny Burning Tree's appeal. Burning Tree filed a complaint and petition for common law writ of certiorari in chancery court. After a hearing, the chancellor dismissed Burning Tree's petition and upheld the decision of the Board.

On appeal to this court, Burning Tree argues that the Board acted arbitrarily and capriciously when it affirmed the fire marshal's decision, that the Board acted without material and substantial evidence when it affirmed the fire marshal's decision, and that the Board's decision violated Tenn. Code Ann. § 68-120-102(b).

STANDARD OF REVIEW

The scope of review with respect to a common law writ of certiorari is limited. *Watts v. Civil Serv. Bd.*, 606 S.W.2d 274, 276 (Tenn. 1980); *Leonard Plating Co. v. Metro. Gov't of Nashville & Davidson County*, 213 S.W.3d 898, 903 (Tenn. Ct. App. 2006). A reviewing court may grant relief only when the board or agency has exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. Tenn. Code Ann. § 27-8-101; *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990). The scope of review by the appellate courts is no broader than that of the chancery court in these cases with respect to evidence presented before the Board. *Watts*, 60 S.W.2d at 277.

Reviewing a common law writ of certiorari "does not extend to a redetermination of the facts found by the board or agency whose decision is being reviewed." *Leonard Plating*, 213 S.W.3d at 903. Courts are not permitted to "(1) inquire into the intrinsic correctness of the decision, (2) reweigh the evidence, or (3) substitute their judgment for that of the board or agency." *Id.* at 903-04 (citations omitted). Rather, the courts must review the board decision to determine whether there is any material evidence to support the decision; "a decision without evidentiary support is an arbitrary one." *Id.* at 904. The determination of whether the board's decision is supported by material evidence is a question of law. *Id.* To support a board's decision, the material evidence "must exceed a scintilla of evidence but may be less than a preponderance of the evidence." *Id.*

ANALYSIS

Applying this standard of review to the present case, we are to determine whether the Board exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently in affirming the fire marshal's citation of Burning Tree. We are not to reweigh the evidence regarding the Board's decision.

Burning Tree argues that the Board acted arbitrarily and capriciously and that its decision was not supported by substantial and material evidence. In making its decision, the Board considered photographs and a map of the apartment complex and the testimony of witnesses[3] as summarized above. The undisputed proof established that the apartment groupings at issue shared a common roof. The Board chairman stated that the Board had consistently interpreted section 31.3.4.1 to apply to structures with more than 11 units under one roof. Thus, there is material evidence to support the Board's interpretation of section 31.3.4.1. We agree with the chancellor's conclusion that "[t]he interpretation of the term 'building' that is being applied by the Board in the current enforcement proceedings is reasonable and thus is not itself arbitrary and capricious or otherwise at odds with administrative law principles."

---

[3] Burning Tree argues that Dr. Munger's testimony should be disregarded by this court as "improper and inadmissible" on the basis that Dr. Munger gave expert opinion testimony regarding his interpretation of the Metro code section at issue. County and city administrative boards have broad discretion to determine the admissibility and weight of evidence. *See Case v. Shelby County Civil Serv. Merit Bd.*, 98 S.W.3d 167, 176 (Tenn. Ct. App. 2002); *Anderson v. Carter*, 512 S.W.2d 297, 306 (Tenn. Ct. App. 1974). As indicated in our summary of Dr. Munger's testimony, he testified about matters other than those to which Burning Tree objects. Moreover, even without Dr. Munger's testimony, the record contains evidence to support the Board's decision.

The real crux of Burning Tree's arguments is its assertion that the Board's actions were arbitrary and capricious in light of the Metro Fire Marshal's previous history of not applying section 31.3.4.1 to apartments configured as those at issue in this case. Burning Tree argues that Metro changed its interpretation of "building" in 2004 and then began enforcing the new interpretation against Burning Tree and numerous other apartment complexes. As Metro points out, however, the focus of this appeal is on the actions of the Board, not those of the fire marshal. There is no dispute that the Board consistently interpreted "building" to mean all dwelling units under one roof. Moreover, as the chancellor stated, "The record does not support the emphatic contention of the petitioner that this is a case wherein the Government has changed its interpretation of the term 'building' as it appears in the Code." We agree with the chancellor's conclusion that "[t]his is instead simply a case in which the Government failed to enforce the law–a law the petitioner was required to obey even if the inspectors failed to enforce it until 2004." Evidence was presented by Metro that its relaxed enforcement of section 31.3.4.1 was prompted by the high number of nuisance alarms and that this phenomenon had decreased in recent years. In any event, a period of non-enforcement alone does not invalidate the ordinance or deprive Metro of its obligation to enforce it. *See Rives v. City of Clarksville*, 618 S.W.2d 502, 506 (Tenn. Ct. App. 1981); *Lee v. Seitz*, 13 Tenn. App. 260, 265 (Tenn. Ct. App. 1930).[4]

In light of our conclusion that this case involves the non-enforcement of an ordinance, not a new interpretation of the ordinance, Tenn. Code Ann. § 68-120-102(b) is not applicable since it prohibits retroactive enforcement of standards when a building "conformed to the construction safety standards legally effective at the time of construction." The predecessor to section 31.3.4.1 had essentially the same pull station alarm requirements at the time when Burning Tree was constructed.

---

[4]As the chancellor pointed out in his excellent memorandum, this case "does not involve an attempt to invalidate or bar enforcement of an ordinance based on a theory of vested rights or estoppel." The trial court further stated:

> No evidence indicates that the petitioner was ever affirmatively told that it did not have to comply with the ordinance. Moreover, the petitioner introduced no evidence that government officials ever announced as policy that Metro would not enforce the "pull station" requirement. The lack of enforcement here was the result of either oversight or indifference by Metro's inspectors–oversight or indifference the officials now wish to end.

Moreover, under Tennessee law, "[p]ublic agencies are not subject to equitable estoppel or estoppel in pais to the same extent as private parties and very exceptional circumstances are required to invoke the doctrine against the State and its governmental subdivisions." *Bledsoe County v. McReynolds*, 703 S.W.2d 123, 124 (Tenn. 1985). In cases in which estoppel has been applied to public agencies, "the public body took affirmative action that clearly induced a private party to act to his or her detriment, as distinguished from silence, non-action or acquiescence." *Id.* at 125. The kind of inducement "necessary to impose estoppel on a governmental agency is that which leads to an implied contract between a party and the governmental agency or causes the party to relinquish a cause of action." *Thompson v. Dept. of Codes Admin.*, 20 S.W.3d 654, 664 (Tenn. Ct. App. 1999). In *White v. City of Townsend*, No. 03A01-9410-CV-00392, 1995 WL 306877, *8 (Tenn. Ct. App. May 19, 1995), the court determined that the issuance of a building permit alone was not sufficient to invoke equitable estoppel in that case.

Despite the fact that Burning Tree was not cited then, the apartment complex was in violation of the ordinance at the time of construction.

We affirm the decision of the trial court to dismiss the petition for writ of certiorari. Costs of appeal are assessed against the appellant.

_____
ANDY D. BENNETT, JUDGE